counsel for the defendant. The provisions of the Revised Statutes regulating charities clearly distinguish between benevolent institutions and corporations formed under the law of 1848 for benevolent, charitable, and other purposes; and I think that the act of 1872 does not apply to corporations organized for the purpose specified in the certificate of incorporation. I think, therefore, the defendant is entitled to judgment. If plaintiff desires to appeal, however, I will direct that all proceedings after the entry of judgment be stayed until the determination of such appeal.

---

(5 Misc. Rep. 43.)

### ALLEGANY & K. R. CO. v. WEIDENFELD et al.

(Supreme Court, Special Term, Erie County. August, 1893.)

1. ABATEMENT—ANOTHER ACTION PENDING—ADDITIONAL PARTIES.

   The fact that certain matters, as a ground of equitable relief, are available to a defendant in a pending action, will not prevent such defendant from bringing a separate action against the other parties to such action, where he seeks additional affirmative relief against other persons, not parties thereto, though the court has power, as a court of equity, in the pending action, to bring in additional parties, in order that the rights of the litigants may be fully adjusted, since he is not obliged to apply to the court for such relief, and take the chances of its being granted.

2. BILL OF PEACE—EQUITABLE ACTIONS.

   A bill of peace is not restricted to actions at law, but applies to equitable actions as well.

3. INJUNCTION—ACTIONS IN ANOTHER STATE OR IN FEDERAL COURTS.

   Though the courts of New York cannot enjoin the courts of another state or of the United States from proceeding with actions pending therein, they may enjoin the parties to such actions who are residents of New York, and within their jurisdiction, from prosecuting the actions.

4. ACTION—MISJOINDER OF CAUSES.

   An action was brought to annul a contract, and to cancel a mortgage given pursuant thereto, on the ground that they were procured by means of a conspiracy between some of the defendants to defraud plaintiff, and also to enjoin an action against plaintiff by defendant P. for services rendered. Plaintiff alleged that he had fully paid for such services, and also that they were rendered at the request and for the benefit of the conspiring defendants, who had caused P. to sue plaintiff therefor. *Held* that, as to the prayer to enjoin the action by P., there was a misjoinder of causes, as such cause of action did not appear to have been connected with, or to have grown out of, the contracts sought to be annulled.

Action by the Allegany & Kinzua Railroad Company against Camille Weidenfeld and others to cancel certain contracts, and for other relief. Some of the defendants demurred to the complaint. Sustained.

Lewis, Moot & Lewis, for plaintiff.
C. Walter Artz, for defendants.

HAIGHT, J. Demurrer by defendant Weidenfeld and certain other defendants to the plaintiff's complaint, upon the ground that it fails to state a cause of action against the demurring defendants, and that causes of action, if any exist, have been improp-

erly joined therein. It appeared that the defendants Spencer S. Bullis and Mills W. Barse were the chief stockholders, and practically owned and controlled the Allegany & Kinzua Railroad Company of New York, the Allegany & Kinzua Railroad Company of Pennsylvania, and the Bradford & Corydon Railroad; that the defendant Bullis owned or controlled 30,954.19 acres of timber lands in McKean county, in the state of Pennsylvania, and Cattaraugus county, in the state of New York; that such lands were remote from railroads, and would become more valuable if a railroad was constructed contiguous thereto, or through such lands, whereby the timber, bark, and lumber cut therefrom, and manufactured thereon, could be readily carried to market. In order to accomplish that result, it was determined that the railroads aforesaid should be extended through such lands, and their several lines of road connected with each other. In order to carry out this determination, and provide the necessary funds with which to construct the new roads, an agreement was entered into on the 8th day of October, 1889, by and between I. B. Newcombe & Co., bankers and brokers, 54 Wall street, in the city of New York, and the defendants Bullis and Barse, which provided, in substance, that the Bradford & Corydon Railroad and the Allegany & Kinzua Railroad of Pennsylvania should be consolidated into one railroad corporation, with a capital stock of $250,000; that the new corporation formed by such consolidation should issue its bonds for $250,000, payable 30 years after date, with interest at 5 per cent. per annum, payable semiannually in gold; that to secure the payment of such bonds a sinking fund of $12,500 per annum should be created, to pay off the principal and interest thereof, and a trust deed or mortgage should be executed upon the property of the corporation and timber lands aforesaid to the Central Trust Company of New York, as trustees, to secure the payment of such bonds. It was further agreed that I. B. Newcombe & Co. should sell $210,000 of such bonds at par, and pay the proceeds thereof to Bullis and Barse; that I. B. Newcombe, & Co. were to receive $40,000 of such bonds, at par, for their commission and services in selling the bonds, and that out of such $40,000 of bonds they should deliver to the defendant Byrne, engineer, $15,000 thereof; that they should also receive $100,000 of the capital stock, at par value, of the new corporation, of which they were to deliver to Byrne $15,000 thereof. They were also to have an option for two years, permitting them to purchase the balance of the capital stock of the new corporation at $66.66⅔ upon each $100 of the par value. The new corporation was to be managed by seven directors, of which I. B. Newcombe & Co. were to select three, and the defendant Weidenfeld was to be the treasurer. On the 9th day of May, 1889, a further contract was entered into between the same parties, in and by which it was, in substance, agreed that the Allegany & Kinzua Railroad of New York should also be consolidated with that of the Bradford & Corydon Railroad of Pennsylvania and the Allegany & Kinzua Railroad of Pennsylvania, and that the new railroad corporation thus created should issue its

capital stock for $500,000 and its bonds for $500,000, par value, to be secured by a first mortgage or deed of trust to the Central Trust Company of New York upon its railroad property and franchises, including 30,000 acres of such timber lands for the first 46 miles of railroad constructed and completed, and upon 16,000 acres of timber lands for an additional 24 miles of railroad to be constructed and completed, making 70 miles in the aggregate.   On the same day another agreement was entered into by and between the Allegany & Kinzua Railroad Company of New York and the Interior Construction & Improvement Company, in and by which it was, in substance, agreed that the Interior Construction & Improvement Company was to construct the new roads provided for by the aforesaid contracts at a cost not to exceed $7,000 per mile, and that the defendant the Allegany & Kinzua Railroad Company of New York was to issue its gold bonds to the amount of $500,-000, payable in 30 years, at 5 per cent interest, and to secure such bonds a mortgage or deed of trust upon its property and railroad franchises was to be given.   It was also to issue $390,000 additional capital stock, which, with the bonds aforesaid, was to be delivered to the construction company; and, when the consolidation of the three roads should be completed, then the new corporation so organized upon such consolidation should issue its stock and bonds, and deliver its mortgage or deed of trust, as provided in the aforementioned agreements, and exchange the same for the stock and bonds so issued by the old corporation.   These contracts contained numerous provisions, which it will not be necessary to now consider.   Pursuant to such contracts, a consolidation was effected between the three railroads named, and the new corporation organized under the name of the Allegany & Kinzua Railroad Company, which is the plaintiff in this action.   A mortgage was executed and delivered, upon the property and franchises of the plaintiff, including 30,000 acres of the aforesaid timber lands, to the Central Trust Company of New York, to secure the payment of the bonds issued by it, and its bonds and stocks were issued as provided for in such agreements.

It is alleged that Smith, Weidenfeld, Newcombe, and Byrne conspired together to gain the possession and control of the income, rents, profits, and equitable title of the property of the plaintiff without paying therefor; that the defendants Bullis and Barse were induced to enter into the contracts mentioned by reason of the false advice of their attorney as to the construction and meaning of the contracts; that he was one of the conspirators, and had interests adverse to them, which interest was to them at that time unknown; that they would not have signed the contracts, had they known or understood their true construction.   It is further charged that the contracts were against public policy, and voidable; that they contained provisions for the control of the corporation during its corporate life, and assumed to divide up the capital stock and bonds that were issued; that they provided a system to consolidate the railroad corporations contrary to the constitution and laws of the states of New York and Pennsylvania;

and that they contain no adequate provision as to when or where the railroads should be built, etc. It is further alleged that the plaintiff was induced to enter into the contract with the Interior Construction & Improvement Company upon the representations that it was a solvent and responsible corporation, worth over $100,000 above liabilities, and that the contract was a proper one to make, whereas, in fact, the corporation was a myth, having no existence except upon paper, and that the agreement was entered into for the unlawful purpose of enabling the officers and directors of the plaintiff, when formed, to do acts indirectly, in the constructing of its railroads, which they could not do directly or lawfully; that the new road has not yet been completed in accordance with the provisions of the contracts; and that the bonds and stock issued by the plaintiff are in the hands of some of the defendants, who are not bona fide holders thereof. It is further alleged that the defendants above mentioned did further conspire together to destroy the plaintiff, and to gain possession and control and apparent title to its property, by means of multitudinous actions and proceedings at law and suits in equity commenced by themselves, their associates and agents, in the courts of the state of New York, in the courts of the state of Pennsylvania, and the circuit courts of the United States, to the end that the plaintiff might be put to needless expense, and might be annoyed, harassed, embarrassed, and prevented from building its railroad, and from fulfilling its lawful contracts to carry lumber, timber, and freight, and from earning dividends upon its capital stock, and money wherewith to pay the principal and interest upon its bonded indebtedness. It then alleges the bringing of numerous actions in the above-mentioned courts, which are specifically set forth, and which may properly be classified as follows: First, actions between defendants, relating to the elections of directors of the plaintiff; second, actions brought by stockholders, on behalf of the corporation, against the defendants Bullis and Barse, to enforce specific performance of their covenants; third, actions for wages; fourth, an action by the Central Trust Company to foreclose the mortgage; fifth, an action to have the mortgage canceled as a lien upon the timber land; sixth, actions for accounting under the contracts; seventh, actions for damages by reason of the alleged failure of the construction company to complete the roads in accordance with the contract.

The relief prayed for is that the court cancel the contracts referred to, for illegality and invalidity in their inception, and because of their nonperformance, and the partial or entire failure of consideration to support them; that the stocks and bonds issued by the plaintiff, and held by the defendants, who have not parted with value therefor, be returned to the plaintiff; that the court determine who are the bona fide holders of such stock and bonds, and that the plaintiff be permitted to relieve its property from the lien of the mortgage upon such terms as shall be just and equitable, and that the mortgage be canceled, as a cloud upon the title of the plaintiff's property; that the court enjoin each of the defendants from bringing, prose-

cuting, or maintaining any suits, actions, or proceedings in equity or at law, in any court or courts, involving any of the matters alleged; that the court determine, as between the parties hereto, each of the issues in the actions pending, and to that end the pending actions be consolidated; that judgment be awarded against the conspiring defendants for the damages that the plaintiff has suffered by reason of their acts; and that it be adjudged that the plaintiff was lawfully incorporated, and now exists with all the rights and powers of a corporation de jure.

The first question is as to whether a cause of action is stated in the complaint. Assuming, as I must, that a conspiracy existed as alleged, it follows that a cause of action is stated in the complaint for an annulment of the contracts and the mortgage, in so far as the conspiring defendants are concerned. It is contended, however, that the allegations of the conspiracy were available to the plaintiff in several of the actions already brought, and especially in that of Bullis v. Trust Company and others. Doubtless, this is true, but in this action additional affirmative relief is sought against persons not parties in those actions, by way of a surrender and cancellation of bonds and stock, on the ground that they are not bona fide holders thereof for value, and who are necessary parties, and entitled to participate in the trial, and to an adjudication of their rights. It is not questioned but that a court of equity has the power to bring in additional parties, in order that the rights of the litigants may be fully determined and adjusted. Derham v. Lee, 87 N. Y. 599; Turner v. Conant, 18 Abb. N. C. 160. But the plaintiff, as defendant in those actions, was not obliged to apply to the court for such relief, and take the chances upon its being granted, but it had the right to bring an independent action for the relief sought, against the persons necessary for a full and complete adjustment of its rights. It is quite possible that an injunction would not issue to restrain the trial of a former action brought, where the matter alleged in the complaint would be a perfect defense to that action. Savage v. Alen, 54 N. Y. 458, 462; Grand Chute v. Winegar, 15 Wall. 375; Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. Rep. 193; New Jersey Zinc Co. v. Franklin Iron Co., 29 N. J. Eq. 422; High, Inj. § 51.

But these cases have reference to a single action pending. In this action, further relief is demanded, in the nature of a bill of the peace, to restrain a multiplicity of suits; and, as such, the authorities referred to have but little, if any, application. A bill of the peace may be brought to establish and perpetuate a right which may be controverted by different persons at different times, and by different actions, or where attempts have been made to overthrow the right, and justice requires that the party should be quieted in the right. It is designed to procure repose from perpetual litigation. In order to maintain an action in the nature of a bill of the peace, the plaintiff must be entitled to maintain an action for independent affirmative relief, either equitable or legal, for equity will not take jurisdiction to restrain a multiplicity of suits, as the relief sought, independent of a prior existing cause of action. The prior existing rights which the plaintiff seeks to have adjudged must be such as

necessarily affect or dispose of the claims of all the parties, which it is sought by the bill to quiet. 2 Story, Eq. Jur. § 853; 1 Pom. Eq. Jur. §§ 249, 250. As we have seen, the plaintiff, in its complaint, demands, as affirmative relief, the annulment of the contracts and mortgages, and the surrender of the outstanding bonds and stocks in the hands of those who are not bona fide holders thereof, and, as an incident to such relief, the restraining of all the actions based upon such contracts and mortgage. It is claimed, however, that this complaint could not be sustained as a bill of the peace to restrain a multiplicity of actions, for the reason that such a bill only lies to restrain actions at law. But my attention is called to no case that holds that bills of the peace are necessarily restricted to actions at law. In the case of Bank v. Goddard, 131 N. Y. 494, 30 N. E. Rep. 566, it is said that a multiplicity of actions at law, involving conflicting claims to the same property, which a court of law could not solve without working injustice, founded upon one continuous and fraudulent scheme, inflicting a similar degree of injury upon all, and different only in detail and degree, present a state of facts which fully justifies the interference of equity. It does not, however, state that equity actions may not, also, be included and restrained. It is true that, in most of the cases where actions in the nature of bills of the peace have been instituted, it was for the purpose of restraining actions at law. Pomeroy says that "the multiplicity of suits to be avoided are generally actions at law." 1 Pom. Eq. Jur. § 243. But in the case of Railway Co. v. Ramsay, 45 N. Y. 637, it was held that a court of equity has power, by injunction, to restrain the proceedings in any equitable action in the same court, and that the supreme court in one judicial district in this state has jurisdiction in an action brought for that purpose to restrain, by injunction, proceedings in another action pending in that court in another district. Folger, J., in delivering the opinion of the court, says:

"It would be too much to say that in no case can a court restrain the suitors in another court of co-ordinate powers. Thus, the jurisdiction of a court of equity to interfere and prevent a multiplicity of suits, or to draw to one action cognate questions and interests sought to be litigated in many actions, is well established. But is it to be held that the exercise of this jurisdiction is thwarted when the numerous suits are divided among several courts, of co-ordinate law and equity powers? The suit to bring to one judgment all the actions must be in one of the courts, and, to make that suit effectual to the end sought, the power must be in that court to enjoin the parties to the suits in the co-ordinate courts from proceeding therein. An instance of the exercise of one branch of this power sanctioned by this court is found in the case of Railroad Co. v. Schuyler, 17 N. Y. 592."

It appears to me that this case is an authority sustaining the right to maintain an action in the nature of a bill of the peace, even though some of the cases sought to be restrained are actions in equity.

It is claimed that an injunction will not issue to restrain the federal courts, or those in the state of Pennsylvania, from proceeding with the actions pending therein. This is doubtless so, but this court has the power, in proper cases, to control and restrain the persons who are residents of this state, and within the jurisdic-

tion of the court, from prosecuting such suits. Cole v. Cunningham, 133 U. S. 107, 10 Sup. Ct. Rep. 269; Allen v. Buchanan, (Ala.) 11 South. Rep. 777. Whether it will exercise such power, by reason of comity between the courts, or will leave the plaintiff to apply to such courts to stay the actions pending therein, it is not necessary to now determine, for the question is upon the demurrer, and not upon an application for an injunction. If the court should, in the exercise of its discretion, conclude to refuse an injunction as to the actions pending in those courts, it would not necessarily make the complaint demurrable.

Is there a misjoinder of causes of action? As we have seen, this action was brought to annul the contract, and remove the mortgage as a lien upon the property. As additional relief, it is sought to have the actions set forth in the complaint consolidated herein, and the rights of the parties adjudicated, and that they be restrained from the further prosecution of those actions. Claims arising out of the same transaction, or transactions connected with the same subject of action, may be united. Code Civil Proc. § 484. The contracts and mortgage sought to be avoided are, in legal effect, one transaction designed to accomplish one object, and that is the uniting the three separate and distinct railroads into one, by the extension of their lines of road through the timber lands mentioned. All of the actions set forth, which are founded upon or grow out of these contracts, may be said to be connected with the main transaction, and thus properly united. The determination in this action as to the validity of the contracts, in many of the cases, would determine the rights of the parties prosecuting those actions. Railroad Co. v. Schuyler, 17 N. Y. 592. The complaint alleges that William Barclay Parsons brought an action in the supreme court in the city and county of New York, against the plaintiff in this action, to recover $1,371.33, and interest from January 6, 1891; that the plaintiff in this action, who was the defendant in that action, appeared therein, and answered by denying that there was anything due and owing Parsons for services, and alleged that he had been fully paid for all services rendered by him, and that in fact the services rendered by him were rendered at the request of Newcombe & Co. and defendant Byrne, for their benefit, and for which they should pay. It is alleged that the conspiring defendants caused Parsons to bring this action, but it is not apparent how this allegation affects the rights of the parties. Parsons is one of the demurring defendants, and, if he has a cause of action against the plaintiff for services rendered, he is entitled to maintain such an action, even though he was requested to bring it by the conspiring defendants. If he has been paid, or if the services were not performed for the plaintiff, but were rendered for other parties, the plaintiff has a good defense to his action. But I am unable to see how this action is founded upon, grows out of, or is connected with the contracts sought to be annulled. Should the plaintiff be awarded all the relief prayed for as to the contracts or of the mortgage, it would not affect the right of Parsons to recover for services rendered by him to the plaintiff. In this particular, it appears to me that causes of action are im-

properly united in the complaint, and it is therefore multifarious and demurrable. The demurrer by the defendants was joint and several. It is therefore sustained, with leave to the plaintiff to amend the complaint within 20 days, on the payment of the costs of the demurrer.