GULF & SHIP ISLAND RAILROAD COMPANY ET AL. V.
VIRGINIA M. BARNES ET AL.

[48 South. 823.]

1. RAILROADS. *Crossings. Interlocking device. Code* 1906, § 4896. *Duty of companies. Contributory negligence. Imputed negligence. Passengers. Servants.*

Where an interlocking device was maintained by two railroad companies at a crossing of their tracks, authorizing them under Code 1906, § 4896, regulating the subject, to run trains over the crossing without stopping:—

(*a*) Both companies are under duty to the public to keep the device in order;

(*b*) Both are liable to the passengers of either for injuries resulting from the defective condition of the device; and

(*c*) The negligence of one of the companies in failing to keep the device in order does not preclude its servants, or their legal representatives, from maintaining suits against the other company for damages, or death, resulting from the defective condition of the device.

2. EQUITY. *Jurisdiction. Multiplicity of suits. Defenses. Legal questions. Facts.*

A bill in equity does not lie to prevent a multiplicity of suits unless the same legal questions and practically the same facts are involved in the suits the separate prosecutions of which are sought to be restrained; and the complainant must have a good, legal or equitable, defense to them.

FROM the chancery court of Forrest county.

HON. THADDEUS A. WOOD, Chancellor.

The Gulf & Ship Island Railroad Company, one of the appellants, was complainant in the court below, Virginia M. Barnes and others, appellees, and the Mobile, Jackson & Kansas City Railroad Company, an appellant, were defendants there. The latter railroad company made its answer a cross-bill against the Gulf & Ship Island Railroad Company and the appellees. From

a decree adverse to the two railroad companies they both appealed to the supreme court.

The opinion of the court states the facts.

*N. C. Hill,* for appellants.

The facts admitted by the pleadings show that a collision occurred between the trains of the two railroad companies at a railway crossing, and that the engineer of one train was killed, his fireman seriously injured and two passengers were more or less seriously hurt; and, in addition, an engine of one of the railway companies was seriously damaged. There are three actions at law pending against the two railroad companies, instituted by Mrs. Barnes, the window of the deceased engineer, one action being against the Gulf & Ship Island Railroad company for seventy-five thousand dollars, and one against the Mobile, Jackson & Kansas City Railroad Company for seventy-five thousand dollars and one against both of these railroad companies jointly for seventy-five thousand dollars. There are three other actions at law now pending, instituted by John Goldsby, the injured fireman, for his alleged damage, one action being against the Gulf & Ship Island Railroad Company for ten thousand dollars, one against the Mobile, Jackson & Kansas City Railroad company for ten thousand dollars, and one against both companies jointly for ten thousand dollars. There are two actions at law pending wherein Mrs. Maggie Gilbert claims twenty thousand dollars damage, one being in Harrison county circuit court against the Gulf & Ship Island Railroad company, and one in the circuit court of Greene county against the Mobile, Jackson & Kansas City Railroad company. And, in addition, there is one action at law pending against the two railroad companies, in the circuit court of Jones county, instituted by L. W. Youmans for two thousand dollars damages. There are thus several actions at law pending wherein large damages are claimed, and each of these actions at law is predicated of precisely the same statement of facts: namely, the collision between two trains of the different railroad companies occuring in July, 1907.

The facts necessary to establish all the defenses to all these actions at law are precisely the same; the only possible difference that could exist would be a difference as to the liability of the railroad company as concerns the employees and as concerns passengers. The law governing all of these cases is the same. It is difficult to conceive a situation more clearly within the rules authorizing chancery to take jurisdiction to prevent a multiplicity of suits, than the one at bar.

If equity refuses to intervene in this cause then there must necessarily be long and expensive litigations on the part of both railroad companies in determining the various actions at law brought against them. *Pollock v. Okolona Savings Bank,* 61 Miss. 294; *Illinois, etc., Railroad Co. v. Garrison,* 81 Miss. 257, 32 South. 996; *Hightower et al. v. Mobile, etc., Railroad Co.,* 83 Miss. 708, 36 South. 82; *Thames v. Mangum,* 87 Miss. 575, 40 South. 327; *Whitlock v. Yazoo, etc., Railroad Co.,* 91 Miss. 779, 45 South. 861; *Tisdale v. Insurance Companies,* 84 Miss. 709, 36 South. 568; *Williams v. City of Jackson,* 82 Miss. 301, 46 South. 551; *Buller v. Scottish, etc., Co.,* 93 Miss. 215; 46 South. 829.

On the question of "community of interest" this court has held that where a common state of facts and a common principle of law are involved equity will assume jurisdiction and prevent a multiplicity of suits. *Pollock v. Okolona Savings Bank,* 61 Miss. 294; *Crawford v. Mobile, etc., Railroad Co.,* 83 Miss. 708, 36 South. 82. See also *Pomeroy Eq. Jur.,* §§ 244, 274.

In *Thames v. Mangrum,* 87 Miss. 575, 40 South. 327, this court in holding that it was necessary for equity to take jurisdiction in order to prevent a multiplicity of suits, said: "It is a well established rule in this state that in many different classes of suits, equity will not refuse to settle in one suit all matters at issue, even though the various defendants may have different interests or interpose various defenses. All matters in dispute may be litigated in one proceeding; so that the ultimate decision of one suit will obviate all necessity of instituting and prosecut-

ing many different actions at law. In this case, the right of plainants as against all the defendants, arises from one and the same state of facts. It is in just such a case, that the wisdom of the rule permitting equity to assume general jurisdiction, is most apparent."

In *Illinois, etc., Railroad Co. v. Garrison,* 81 Miss. 257, 32 South. 996, jurisdiction in equity was upheld in a case of multiplicity of suits, and the case of *Pollock v. Okolona Savings Bank Co.,* 61 Miss. 293, was quoted and approved, as was also the case of *Insurance Co. v. Van Cleave,* 191 Ill. 410. A reference to this Illinois decision shows that there was no community of interest between the parties complainant other than a community of interest in the law and facts. The action was based upon an allegation filed by sundry insurance companies that they had paid under protest two per cent of their earnings as a tax, which was illegal, and they jointly sued the state insurance commissioner for a return of the tax, and the Illinois court held that equity had jurisdiction in order to prevent a multiplicity of suits; the law and facts being applicable to all alike.

The case of *Whitlock v. Yazoo, etc., Railroad Co.,* 91 Miss. 779, 45 South. 861, put this matter, however, beyond dispute. In that case a number of persons had bought round-trip excursion tickets from the city of Vicksburg and being duly delayed in returning, brought actions at law in the circuit court, claiming actual and punitive damages, whereupon the railroad company filed its bill in the chancery court, alleging that the law and facts in all the cases were similar, and asking for an injunction against the prosecution of them at law and that chancery settle all of the controversies in one suit, to this bill a demurrer was filed, the grounds of which were almost identical with the grounds in the case at bar, and certainly raising the same questions that are raised here. In that case, WHITFIELD, C. J., said: "It is clearly and thoroughly settled by the best considered modern decisions in this state and elsewhere, that such jurisdiction exists in all cases of this character," citing *Railroad Co. v.*

*Garrison; Crawford v. Mobile, etc., Railroad Co.; Pollock v. Okolona Savings Bank.* In *Railroad Co. v. Garrison,* 81 Miss. 257, 32 South. 996, the court referred to and approved the case of *Woodward v. Seely,* 50 Am. Dec. 451, and especially, referred to pages 452 and 453, 50 Am. Dec. where it is held, that "community of interest" other than a similarity of law and facts, is not necessary for chancery jurisdiction to avoid multiplicity of suits.

*James H. Neville and R. L. Dent,* on the same side.

The law governing each of the cases here concerned is the same, and in all of the cases the same rules of procedure must be applied. It is true that Barnes and Goldsby were employes of the Mobile, Jackson and Kansas City Railroad Company, but they held no such relationship towards the Gulf and Ship Island Railroad Company. The other plaintiffs were passengers of the Mobile, Jackson and Kansas City Railroad Company, but the Gulf and Ship Island Railroad Company sustained no such relation to them. The same rules of law which determine the liability of the Gulf and Ship Island Railroad Company to the representatives of the engineer of the Mobile, Jackson and Kansas City Railroad Company, will determine the liability of the Gulf and Ship Island Railroad Company to Youmans and to Gilbert, and here we have as to all of them a community of interest and a similarity of law and facts, and this court has held that community of interest, other than similarity of law and facts, is not necessary to maintain an injunction to prevent a multiplicity of suits.

The bill and the supplemental bills filed in this chancery suit allege the insolvency of all the parties defendant save the Mobile, Jackson and Kansas City Railroad Company. The court is here presented with this state of facts; several suits for large sums of money are severally pending against the appellants, all instituted by insolvent plaintiffs; all to be determined on the same state of facts and by the same questions of law, and it does seem that this mere statement is sufficient to warrant a

reversal of the decree of the court below in dissolving the injunction and awarding damages against appellant.

The case of *Railroad Co. v. Garrison,* 81 Miss. 257, 32 South. 996; is in point. The Illinois Central Railroad Company filed a bill in chancery against Garrison and six others who had instituted their separate actions against the railroad company in the court of a justice of the peace. The allegations of the company's bill showed that it was filed to prevent a multiplicity of suits and to prevent threatened suits by persons pecuniarily irresponsible. The supreme court, through the learned chief justice, in that case declared that the jurisdiction of the chancery court was too well settled to be doubted; that it should convene all these parties in one suit and determine therein the single question on which liability, past, present and future depended, so as to prevent endless multiplicity of suits with their attendant and useless consumption of time and cost.

In the case of *Crawford v. Railroad Co.,* 83 Miss. 708, 36 South. 82, the decree of the chancellor in dissolving an injunction was reversed; the supreme court declaring that the equitable jurisdiction to grant relief prayed for in the bill, on the sole ground that it would prevent a multiplicity of suits is clearly established.

Whatever question may arise between the Mobile, Jackson and Kansas City Railroad Company and the appellees as to its liability, such question can never arise with reference to the liability of the Gulf and Ship Island Railroad Company, for this latter company owed no duty to any of the appellees as employer or carrier. We insist that the position taken by this court in the cases of *Whitlock v. Railroad Co., Garrison v. Railroad Co.* and *Crawford v. Railroad Co.,* is in keeping with the trend of modern decisions, is wise, and is a correct intrepretation of the law, and, unless these decisions are to be overruled we confidently insist that the decree of the court below in the case at bar must be reversed and this cause remanded to the chancery court to be proceeded with to a final determination.

*Flowers & Whitfield,* on the same side.

It must be conceded that the case of *Tribette v. Illinois Central R. R. Co.,* 70 Miss. 182, 12 South. 32, has been overruled. In that case CAMPBELL J., held that jurisdiction could not be maintained by a court of equity unless there was some kind of equitable jurisdiction other than the prevention of a multiplicity of suits; that it is not sufficient to show that all the cases arise out of the same transaction and depend upon the same questions of law and the same questions of fact. It was really held in that case that the cases consolidated by the chancery proceedings must be such as could have been instituted in that court originally. Chancery jurisdiction under the *Tribbett case* could only be invoked for the purpose of consolidating suits all of which might have been brought in that court in the first instance. Under that decision the chancery jurisdiction could not have been maintained in the *Crawford case* nor in the *Garrison, Tisdale* and *Whitlock cases.* All of these subsequent decisions are in conflict with the holding in the *Tribette case.* And the *Tribette* case if allowed to stand would have overturned the rule followed in the case of *Pollock v. Okolona Savings Bank,* 61 Miss. 293.

Our court is now firmly committed to the doctrine that the jurisdiction of the chancery court is ample to entertain a bill whose purpose is to consolidate several causes pending in a court of law, on the ground that the causes of action arise out of the same event and involve a common state of facts and a common principle of law. It is not essential that there be any community of interest in the subject-matter in the litigation. The parties may be suing each independently of the others. One of the litigants may have no interest in the result of the litigation as to any other litigant. There may be no equity involved or contended for to warrant the chancery court in taking jurisdiction except that the case depend upon a common state of facts and a common principle of law.

In the case at bar it appears that all the suits at law grow out of the same event. There was a collision between two trains at

the crossing of two railroads. Each suit in the circuit court grew out of this happening. The one question of fact involved is: Which company is to blame for the collision, the Gulf and Ship Island Railroad Company, or the Mobile, Jackson & Kansas City Railroad Company? No doubt can be entertained that one of these companies is to blame. One of them is liable. The question of fact to be answered in each case is: Which of the two is liable? There will be little difficulty as to further procedure, after this question is determined. This is the vital issue in every case. The testimony necessary to be adduced will have for its purpose the fixing of liability upon one or the other of these railroad companies. This evidence will have to be heard in the trial of each case. It is the trial of this question, common to all the cases, which would consume the time of the circuit court and of the litigants and would run up a heavy cost-bill in each case. It is contended by learned counsel for appellees that different defenses could be made by defendants to the different suits at law brought in the circuit court; and it is contended that the law is not the same in all of the cases at law; that, as to the claim of Mrs. Barnes, contributary negligence on the part of the deceased might be pleaded; that as between the two railroad companies there is a contract which would have to be considered but which would be immaterial in the trial of the other cases. Counsel for appellees fail however to point out any differences as to the question of law involved except as between the two railroad companies and as between Barnes and the two railroad companies. In other words, it must be conceded by opposing counsel that, as to Goldsby, Gilbert and Youmans there is a common state of facts and a common principle of law. As to these three we have both the essentials of chancery jurisdiction. Even under the argument of counsel for appellees, the chancery court has jurisdiction to entertain this bill in so far as these three litigants are concerned.

If chancery courts are to assume jurisdiction to prevent multiplicity of suits where it appears that the several actions at law

are based upon a common state of facts and a common principle of law, it necessarily follows that such court, in deciding whether jurisdiction will be taken, cannot look ahead and figure out what defenses may possibly be available. The court will not, when asked to take jurisdiction, decide whether the defenses are all alike, but will only consider whether the claims are based upon the same principle of law and the same state of facts. This is as far as any court can go. If it is necessary to go further, then the court might assume jurisdiction and afterwards discover, when different defenses were made, that it had no jurisdiction. In the *Whitlock case* we do not understand that at the time the the chancery court assumed jurisdiction it was well known what defenses would be made. If the rule contended for by appellees is sound, then there are very few situations similar to this which can be determined by a chancery court. Whenever its jurisdiction is invoked to prevent a multiplicity of suits it would be necessary for the chancery court to be advised fully and finally not only as to the facts and the law upon which each claim is based, but also as to what defenses are expected to be made to the suits. And the party invoking chancery jurisdiction would be bound by his statement as to what defense is proposed by him to each claim. If he should make a mistake in this regard, and, as the trial progressed, other defenses should develop, he could not under such theory avail himself of them, because it would oust the chancery court of jurisdiction. *Illinois Central Railroad Company v. Schroeder,* 113 N. W. 51.

We insist that the rule, as asserted and supported by Pomeroy and by this court, only requires the complainant to show that the basis of the several claims is the same; that if it appears, from the original complaints filed, that they depend upon a common state of facts and a common principle of law, then they may be consolidated in a court of chancery. The chancellor is called upon to look no further; does not have to be informed in advance of the defenses; does not have to require all the pleadings to be framed and the issues made up. No two cases are exactly

alike.    The purpose of the law is to furnish a remedy by which time and money may be saved in the trial together of several cases whose merits are substantially the same.

It is contended by learned counsel for appellee that Mrs. Gilbert was never made a party, and that certain of the writs were not served on all the parties against whom they were prayed to be issued, and that none of the defendants appeared at such proceedings except Mrs. Virginia M. Barnes and John Goldsby. It will be noted however that these grounds were not made in the court below, hence this court will not consider such contensions of appellee now.

The circumstances of this case present another ground of equitable jurisdiction besides multiplicity of suits.    It is made clearly to appear by these bills and exhibits that the principal controversy in this litigation is whether the Mobile, Jackson & Kansas City Railroad Company or the Gulf & Ship Island Railroad Company is liable.    The attorneys for Mrs. Barnes have instituted separate suits, one against these companies together and one against each of them severally.    As we have already stated above, there will be little difficulty in the trial of any of these cases after the court has adjudicated which of the two railroads is responsible for the accident.    It seems that plaintiffs at law do not know.    They have tried to avoid the results of any mistake in this regard by suing the companies separately and also jointly.    Now, Mrs. Barnes herself could have invoked the jurisdiction of the chancery court in the first instance.    She has three suits.    Her own cases reach the "multiplicity mark." There is an equity in her cases which gave her the right to file a bill in chancery in the first instance.    This is also true of Youmans and Gilbert.    They have sued both companies.    They do not know which is liable.    They and Mrs. Barnes could have gone into the chancery court in the first instances, and made their showing that one or the other of these two railroad companies is to blame for the accident; that they do not know which is guilty; that they cannot prosecute their claim to effect with-

out having the two defendants brought into court, and compelled to interplead and show upon which responsibility rests. See *Lauderdale County v. Alford,* 65 Miss. 63, 3 South. 243, and authorities there cited.

*Campbell & Campbell,* for appellees.

The decree of the court below must be affirmed for the reason that Mrs. Gilbert was never made a party defendant and for the additional reason that certain of the writs were not served on all. Furthermore, none of the appellees appeared to the said proceedings except Mrs. Barnes and John Goldsby who presented demurrers and motions to dissolve the injunction against them.

Prevention of multiplicity of suits is not, of itself alone, an independent source or occasion of equity jurisdiction in such a sense that it can create a cause of action where none otherwise existed. In other words, a court of equity cannot exercise jurisdiction for the purpose of preventing a multiplicity of suits in cases where the complainant invoking such jurisdiction has not any prior existing cause of action, either equitable or legal. The very object of preventing a multiplicity of suits assumes that there are relations between the parties out of which other litigations of some form might arise. 1 Pomeroy Eq. Jur. 365; *Roland v. Hull,* 92 Md. 301; *Purdy v. Manhattan Railroad Co.* 13 N. Y. Supp. 295; *Storrs v. Pensacola Railroad Co.,* 29 Fla. 617, 11 South. 226; *Turner v. Mobile,* 135 Ala. 73, 33 South. 133.

The decisions cited by learned counsel for appellants to sustain their contentions, are not in point. In equity jurisdiction it is necessary that the defenses in an action of law should all be governed by the same principle of law, and be predicated of practically the same facts. *Southern Steel Co. v. Hopkins,* 47 South. 274; 1 High on Injunctions (4th ed.) § 34; *Pritchard v. Norton,* 106 U. S. 125; *Hale v. Allinson,* 188 U. S. 77; *Alleghany, etc., Railroad Co. v. Weidenfeld,* 25 N. Y. Supp. 71.

Inasmuch as an interlocking device was maintained by the

two railroad companies at the crossing of their tracks, it was their continuous duty to the public to keep the device constantly in order. Code 1906, § 4896.

The declarations of Mrs. Barnes and John Goldsby allege that the railroad companies' tracks crossed at grade and that the interlocking device had been established, and that at the time of the collision and for sometime prior thereto it was not in working order, and was spiked down, but that this fact was not known to engineer Barnes. The declarations further charge that the Mobile, etc., Railroad Company had obtained the consent of the railroad commission to run over the crossing without stopping, which fact was known to engineer Barnes, and that on this account he was accustomed to run over the said crossing without stopping, but that the Gulf & Ship Island Railroad company did not have such permission. If the negligence of the Mobile, Jackson & Kansas City Railroad Company as to this would prevent recovery from the other railroad company for damages to its engine, such negligence on its part would nevertheless in no way effect the right of Mrs. Barnes and John Goldsby to recover from the Gulf & Ship Island Railroad Company.

Under the many decisions of our courts, the decree of the court below should not be disturbed. *Ducton v. Fain,* 109 Tenn. 56; *Turner v. Mobile,* 33 South. 141; *Druon v. Sullivan,* 66 Vt. 609; *Van Auken v. Dammierer,* 27 Ore. 150; *Lehigh Valley Railroad Company v. McFarlan,* 31 N. J. Eq. 730; *Hale v. Allinson,* 188 U. S. 556; *Thompkins v. Craig,* 93 Fed. 885.

*Sullivan & Tally,* on the same side.

The grounds upon which jurisdiction of equity may be successfully invoked in order to prevent a multiplicity of suits have not existence here. *Nevitt v. Gillespie,* 1 How. (Miss.) 108, 26 Am. Dec. 696.

Where it appears that greater danger is likely to result from granting than from withholding equitable relief or where the

inconvenience from many actions at law seem to be equally divided as between the plaintiffs and defendant an injunction in favor of the defendant should be refused and the parties left as they are until their legal rights can be determined at law. 1 High on Injunctions, § 13.

The cases cited by learned counsel for appellants have no bearing here. Equity jurisdiction to avoid a multiplicity of suits is not exercised merely to avoid many suits. To secure equity jurisdiction it is necessary that the suits should be governed by the same principles of law and by practicably the same facts. In the case of *Railroad Company v. Garrison,* 81 Miss. 257, 81 South. 257, cited by opposing counsel, the act complained of was a constantly recurring one, and the plaintiffs not only sued because of it once, but some of them sued several times, and all of them threatened to continue to sue. In *Crawford v. Railroad Company,* 83 Miss. 708, 36 South. 82, it appears that fifty-seven persons separately executed notes aggregating a very large amount, the execution of each note growing out of the same transaction and the validity of each depended upon the same identical principle of law. Because the same identical principles of law apply to all the plaintiffs at law, jurisdiction of equity was maintained at the instance of the defendant railroad companies in order to avoid a multiplicity of suits. The case of *Thames v. Mangrum* 87 Miss. 575, 40 South. 327, can have no bearing on this case at bar. There equity had jurisdiction of the cause of action and therefore assumed jurisdiction to settle all disputed matters in one and the same suit, thereby avoiding a multiplicity of suits. The court simply followed the doctrine that when equity takes jurisdiction for one purpose it takes jurisdiction for all purposes. In the *Tisdale case,* 84 Miss. 709, 36 South. 568, the court distinctly said that the jurisdiction of equity was maintainable in the case to prevent a multiplicity of suits as well as because of the inadequacy of the remedy at law. In the *Whitlock case,* 91 Miss. 979, 45 South. 861, all of the many pending separate actions at law against the railroad com-

pany were by passengers on the same excusion train and the alleged damage claimed by each of them arose by the delay of the excursion train.

The relationship between the two railroad companies, under Laws 1896, § 61, cannot affect the right of the different plaintiffs at law to recover in the circuit court from that one of the two railroad companies which is actually liable for the damages sustained.

Argued orally by *N. C. Hill, R. L. Dent* and *J. N. Flowers,* for appellants, and by *T. H. Campbell,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The case made by this record is as follows: The original bill was filed by the Gulf & Ship Island Railroad Company on the 15th day of June, 1908; the fiat for injunction having been issued by circuit Judge W. H. HARDY on the 13th day of June, 1908, and the bill innvoking the exercise of the equitable jurisdiction of the chancery court in prevention of a multiplicity of suits. To this original bill Virginia M. Barnes and John Goldsby were made respondents. Virginia M. Barnes had sued the Gulf & Ship Island Railroad Company separately at law, and had also brought a suit against the Gulf & Ship Island Railroad Company and the Mobile, Jackson & Kansas City Railroad Company at law, for damages for the death of her husband, the engineer on the Mobile, Jackson & Kansas City Railroad Company engine at the time of the collision. The Gulf & Ship Island Railroad Company pleaded, as one of its defenses to her suit, the contributory negligence of her said husband, Barnes, the engineer. Goldsby sued for damages for personal injury. On the 16th day of June, 1908, the Gulf & Ship Island Railroad Company filed its amended bill against the same two defendants, Virginia M. Barnes and John Goldsby, and also against certain new parties, Mrs. Maggie Gilbert and the Mobile, Jackson & Kansas City Railroad Company, as two ad-

ditional defendants. The allegation in this amended bill was that Mrs. Gilbert had sued the Gulf & Ship Island Railroad Company for damages growing out of the same collision, and that the Mobile, Jackson & Kansas City Railroad Company was threatening to sue the Gulf & Ship Island Railroad Company for damages to its locomotive and cars injured in the same collision. On the 20th day of October, 1908, the Gulf & Ship Island Railroad Company filed its supplemental bill against Virginia M. Barnes and John Goldsby, defendants to the original bill, and Mrs. Maggie Gilbert, defendant to its amended bill, and also made the Mobile, Jackson & Kansas City Railroad Company a defendant. This supplemental bill alleged, amongst other things, that the Mobile, Jackson & Kansas City Railroad Company was threatening to sue the Gulf & Ship Island Railroad Company for damages amounting to $1,400, growing out of the collision, said damages being due to injury to its locomotives, etc., and further alleged that Virginia M. Barnes had instituted another suit in the circuit court of Forrest county against it, the Gulf & Ship Island Railroad Company, joining with it as a defendant the Mobile, Jackson & Kansas City Railroad Company. The said suit was based on the same cause of action as her original suit. The prayer of this supplemental bill was that Virginia M. Barnes be restrained from prosecuting this last suit against the two railroads, and that all the defendants to the supplemental bill be required to propound their cases to the chancery court, and that all the cases to be consolidated into one case, and tried and determined by the chancery court in one suit, for the purpose of avoiding a multiplicity of suits.

On the 10th day of October, 1908, the Mobile, Jackson & Kansas City Railroad Company presented its cross-bill to Judge W. H. Hardy, praying for and obtaining the issuance of a writ of injunction, requiring all these parties, the Gulf & Ship Island Railroad Company, Virginia M. Barnes, and Maggie Gilbert, to come into the chancery court and have all these claims settled there. This answer and cross-bill of the Mobile, Jack-

son & Kansas City Railroad Company prayed also that the Gulf & Ship Island Railroad Company be adjudged liable to the Mobile, Jackson & Kansas City Railroad Company for $2,000 damages to its engine and cars, growing out of the same collision; and it was alleged in said answer and cross-bill that, since the filing of original bill by the Gulf & Ship Island Railroad Company, Virginia M. Barnes had sued the Mobile, Jackson & Kansas City Railroad Company, separately and also jointly with the Gulf & Ship Island Railroad Company, for damages growing out of the same collision, and that Maggie Gilbert had instituted suit against the Mobile, Jackson & Kansas City Railroad Company in the circuit court of Greene county, growing out of the same collision. The injunction issued on this answer and cross-bill restrained Virginia M. Barnes from prosecuting her suit against the Mobile, Jackson & Kansas City Railroad Company, and also her suit against the Mobile, Jackson & Kansas City Railroad Company and the Gulf & Ship Island Railroad Company jointly. In December, 1908, the Gulf & Ship Island Railroad Company presented a second supplemental bill against Virginia M. Barnes, John Goldsby, Maggie Gilbert, the Mobile, Jackson & Kansas City Railroad Company, and one L. W. Youmans, to Judge W. H. Hardy, and obtained another injunction against L. W. Youmans, to restrain him from prosecuting a suit he had brought in the circuit court of Jones county against the Gulf & Ship Island Railroad Company and the Mobile, Jackson & Kansas City Railroad Company jointly for injuries sustained by him in the same collision, while a passenger on the Mobile, Jackson & Kansas City Railroad Company's train.

Some comment is made by the learned counsel for the appellee to the effect that Mrs. Gilbert was never made a party, and to the effect that certain of the writs were not served on all the parties against whom they were prayed to be issued, and that none of the defendants appeared at said proceedings, except Virginia M. Barnes and John Goldsby, who presented a demur-

rer and motions to dissolve, injunctions against them, and the Mobile, Jackson & Kansas City Railroad Company, which filed its answer and cross-bill as hereinbefore stated. To this it is replied by the learned counsel for appellants that none of these points were made in the court below, and that the object of the attorneys for all the parties to these various proceedings is to have this court determine, once for all, whether the equitable jurisdiction to void multiplicity of suits can be invoked on the case thus shown by the record. We shall therefore deal with the case generally, without reference to these minor objections.

The collision in question occurred on July 12, 1907, at an intersection of the Mobile, Jackson & Kansas City Railroad and the Gulf & Ship Island Railroad near the city of Hattiesburg. It will be noted, as a peculiar feature of the litigation, that the two railroads in question in some respects seems to be making common cause against all the plaintiffs suing them, whether separately or jointly. As an example, the attitude of the Mobile, Jackson & Kansas City Railroad Company is that by its cross-bill it not only seeks to recover $2,000 from the Gulf & Ship Island Railroad Company for damages to its locomotive and cars, but at the same time enjoins Mrs. Barnes and Maggie Gilbert from prosecuting their suits against it; and so the Gulf & Ship Island Railroad Company also seeks to enjoin Mrs. Barnes and John Goldsby from prosecuting their suits against it—one for the death of her husband, and one for a personal injury—while at the same time it is contesting with the Mobile, Jackson & Kansas City Railroad Company the question of its liability to that company for alleged damages done to the locomotive and cars of the Mobile, Jackson & Kansas City Railroad Company. In other words, these two railroad companies occupy the attitude of seeking to contest with each other in a court of chancery the question of damages to the locomotive and cars of the Mobile, Jackson & Kansas City Railroad Company, and at the same time both said railroads by means of injunctions are seeking to enjoin all the plaintiffs, in all their suits at law,

from prosecuting their suits at law. It appears, from the declarations, that Mrs. Barnes sued for the death of her husband, who was the engineer of the Mobile, Jackson & Kansas City Railroad at the time of the collision. John Goldsby sues for damages sustained from an injury to his leg; he being a fireman on the same locomotive of the Mobile, Jackson & Kansas City Railroad Company, operated by Barnes as engineer. Maggie Gilbert and Youmans were both passengers on the same train of the Mobile, Jackson & Kansas City Railroad Company, and were hurt in the collision, and sue for damages. The Mobile, Jackson & Kansas City Railroad Company claims damages for injury to its cars and locomotive, and sues the Gulf & Ship Island Railroad Company for such damages. One of the defenses set up against Mrs. Barnes is the contributory negligence of her husband. Again, section 4896 of the Code of 1906 provides as follows: "Where the main track of two or more railroads shall cross at grade, and the companies owning and operating them shall establish at the crossing an interlocking, derail or other safety device, the commission, if satisfied that it is sufficient to protect persons and property from danger at the crossing, may authorize the railroad companies to run their trains over it without stopping at a rate of speed to be fixed by the commission, and in such event the companies shall not be liable to any penalty for failing to stop their trains before running them over the crossing." "Where interlocking or other safety device is used, trains need not stop before crossing." Laws 1896, p. 75, c. 61.

The declarations of Mrs. Barnes and John Goldsby charge that these roads did cross at grade, and that the interlocking device had been established, and that at the time of the collision, and for some time prior thereto, it was not in working order, and was spiked down, but that this fact was not known to Engineer Barnes. They further charged that the Mobile, Jackson & Kansas City Railroad Company had obtained the consent of the railroad commission to run over the crossing without stop-

ping, which fact was known to Engineer Barnes, and that on this account he was accustomed to run over the said crossing without stopping, but that the Gulf & Ship Island Railroad Company did not have such permission. Now, it is perfectly obvious that it was the duty of both these railroads to keep this interlocking device in order, so far as the public were concerned, and that both were negligent as regards the public in not doing so. If the negligence of the Mobile, Jackson & Kansas City Railroad Company in this particular would prevent its recovery from the other railroad for damages to its locomotive and cars, such negligence, nevertheless, would in no way affect the right of Mrs. Barnes and John Goldsby to recover from the Gulf & Ship Island Railroad Company, nor the right of Mrs. Gilbert and Youmans.

Again, if, under section 1985, Code of 1906, the proof should show that the death of Barnes, and the injuries to Mrs. Gilbert, to Goldsby, to Youmans, and to the locomotive and cars of the Mobile, Jackson & Kansas City Railroad Company, were all caused by the running of the locomotive of the Gulf & Ship Island Railroad Company, then manifestly there would arise *prima facie* cases for all these parties against that company; and that company, the Gulf & Ship Island Railroad Company, might overcome this presumption by proof that its locomotive was operated in a lawful manner, and not negligently. Suppose, however, the proof should show that the locomotive of the Gulf & Ship Island Railroad Company was negligently operated, and that this negligent operation was the proximate cause of the death of Barnes, the injury of the other persons, and the damage to the locomtoive and cars of the Mobile, Jackson & Kansas City Railroad Company; then the Gulf & Ship Island Railroad Company would be liable for all the injuries and damages, unless it could show contributory negligence on the part of the servants of the Mobile, Jackson & Kansas City Railroad Company, in charge of that company's locomotive, in which case the Gulf & Ship Island Railroad Company

would not be liable to Mrs. Barnes for the death of her husband, nor to the Mobile, Jackson & Kansas City Railroad Company for the damage to its locomotive and cars.

Let us take one other view of this curiously conceived bill, and let us present this feature of the case in the language of the very able bief of the learned counsel for appellee. The counsel say:

"The amended and supplemental bills of the Guil & Ship Island Railroad Company and the cross-bill of the Mobile, Jackson & Kansas City Railroad Company allege that the same law and facts apply to all the parties injured in the collision, yet it may be possible under the law and the testimony for both roads to escape liability for the death of the engineer Barnes; but it is utterly impossible for both roads to avoid liability to John Goldsby and the passengers, Mrs. Gilbert and Youmans, for the two locomotives collided on the crossing, thus causing the injuries, and it is inconceivable that the fireman and the passengers could be responsible for the collision, but one or the other of the railroad companies, or perhaps both, are responsible. Therefore the same law and facts do not apply to all the persons suing. If the collision was caused by the negligence of Barnes, then Mrs. Barnes cannot recover from either of the railroad companies; but the very negligence of Barnes would entitle the injured passengers and John Goldsby to recover from the Mobile, Jackson & Kansas City Railroad Company, and would prevent the Mobile, Jackson & Kansas City Railroad Company from recovering against the Gulf & Ship Island Railroad Company for damages to the locomotive and cars, for the reason that the negligence of Barnes is the negligence of the Mobile, Jackson & Kansas City Railroad Company.

"If these cases were being tried separately in the circuit court, as they should be, but for these injunctions, the following would be about the way the cases would be tried:

"(a) In the case of *Mrs. Barnes v. Gulf & Ship Island Railroad Company* the plaintiff would prove that Barnes was the en-

gineer of the Mobile, Jackson & Kansas City Railroad Company; that he was proceeding over the crossing under the belief that the derail switch was in good order, and with the consent of the commission to pass over without stopping, and that he had a clear board; that the engineer of the Gulf & Ship Island Railroad Company was seen by witnesses to approach the crossing at high speed, and that he was signaled to stop, but ignored the signals, and the collision occurred, and Barnes was killed. The defendant would attempt to contradict this testimony, especially as to the manner in which its engineer approached the crossing, and would try to show that Barnes was guilty or contributory negligence. This defense would be met by the contention that the Gulf & Ship Island Railroad Company engine was run over the crossing in a reckless and criminally negligent manner, and that contributory negligence would not avail to avoid liability.

"(b) In *John Goldsby v. Gulf & Ship Island Railroad Company* the sole question would be the negligent operation of the switch engine of the Gulf & Ship Island Railroad Company as the proximate cause of the injury. No question of contributory negligence could arise on this trial. No evidence in regard to the derail switch and the duty to keep it in repair would be admissible.

"(c) The cases of Mrs. Gilbert and Youmans against the Gulf & Ship Island Railroad Company would be controlled largely by the same law and evidence as the *John Goldsby case,* except evidence of the nature of the injuries sustained. The evidence would have to be established by different witnesses in all the cases."

The trial of the case of *Mobile, Jackson & Kansas City Railroad Company v. Gulf & Ship Island Railroad Company* would not be controlled by the same law and evidence as the other cases, or any one of them, entirely. The question of contributory negligence of the engineer of the Mobile, Jackson & Kansas City Railroad Company might be raised by the Gulf & Ship Island Railroad Company; but the further question which might arise

between the railroads as to the special duty of one or the other to keep the derail switch in operation or repair and in the event the Gulf & Ship Island Railroad Company should prove that it was the duty of the Mobile, Jackson & Kansas City Railroad Company under a special arrangement to keep the derail switch in repair, and it had neglected to do this, and this was the cause of the injury, the breach of duty of the Mobile, Jackson & Kansas City Railroad Company would prohibit recovery by it; but the other persons injured would not be bound by this arrangement, for as to them it was the duty of both roads to keep the derail switch in repair. Other questions of law and fact can arise between these railroads that the other litigants can have no interest in.

"Looking at this case from the standpoints of the suits against these railroads jointly, we see, for the reasons given above, that the same law and facts will not apply to all the persons injured. In such event the Mobile, Jackson & Kansas City Railroad Company would not be governed and controlled by any law applicable to the plaintiffs suing the roads jointly. If the suits should not be tried against the Gulf & Ship Island Railroad Company individually, nor against the two roads jointly, but should be tried against the Mobile, Jackson & Kansas City Railroad Company individually, then the Gulf & Ship Island Railroad Company is not concerned in the litigation at all, and the law and the facts would not apply alike to all the parties suing; nor would the same law and facts apply in the defense of the Mobile, Jackson & Kansas City Railroad Company, for some of the persons suing were its servants and others were its passengers."

It surely connot be necessary to do more than thus clearly state the case made by this record, to show that equity has no sort of jurisdiction in this case; that the grounds upon which jurisdiction of equity may be successfully invoked in order to present a multiplicity of suits have no existence in this case. The true ground of this equitable jurisdiction was most admirably stated by Chalmers, Justice, in the opinion of this court

in *Pollard v. Okolona Savings & Trust Co.,* 61 Miss. 293. And this same doctrine has been announced in *Nevitt v. Gillespie,* 1 How. (Miss.) 108, 26 Am. Dec. 696. Yet, strange to say, in the case of *Tribette v. I. C. Railroad Co.,* 70 Miss. 192, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, the directly opposite doctrine was laid down, without the slightest reference being made to either the *Nevitt-Gillespie case* or the *Pollard-Okolona Savings & Trust Co. case.* This court has in many cases recently most carefully re-examined this whole subject, and has re-established the doctrine announced in *Pollard v. Okolona Savings & Trust Co.,* and overruled the case of *Tribette v. I. C. Railroad Co.* These latter cases to which we refer are *Railroad v. Garrison,* 81 Miss. 257, 32 South. 996; *Crawford v. Railroad Co.,* 83 Miss. 708, 36 South. 82, 102 Am. St. Rep. 476; *Tisdale v. Fire Ins. Co.,* 84 Miss. 709, 36 South. 568, and *Whitlock v. Railroad,* 91 Miss. 779, 45 South. 861. All these cases receive the hearty indorsement of the learned counsel for both the appellant and appellee in this cause.

There is a scant suggestion in the brief of the learned counsel for appellant, that the *Whitlock case* is authority for the exercise of this jurisdiction here; but that contention is not seriously pressed, as most manifestly it could not possibly be. That the total dissimilarity of the two cases, so far as the exercise of this jurisdiction in prevention of the multiplicity of suits is concerned, may appear at a glance, it is only necessary, having set out the facts making this case, to now set out, over against them, the facts making the *Whitlock case* in 91 Miss. 779, 45 South. 861. What were those facts? These in brief: That Whitlock and forty-nine other negroes had sued the Yazoo & Mississippi Valley Railroad Company for damages in fifty separate actions at law. Each one of these plaintiffs claimed to have been a passenger on the very same excursion train, and that he was unreasonably delayed on that train by the negligence of the railroad company, and each demanded actual and punitive damages for the delay, and the demand of each was based upon the identical

facts on which the demand of every other plaintiff was based, and the principles of law applicable to each one of these forty-nine suits were precisely the same. It certainly would be idle to waste further time showing the utter lack of similarity between these two cases. The *Whitlock case* rested, like all the other cases, securely upon the basic proposition that this jurisdiction is exercisable where the principles of law are identically the same and the facts are substantially the same. Indeed, one of the learned counsel for appellees not only correctly says that the *Whitlock case* was properly decided, but that it is perfectly manifest it is not at all analogous to the case under consideration, and further states the correct proposition that the *Whitlock case* is supported in all particulars by the recent cases of *Southern Steel Co. v. Hopkins,* decided by the supreme court of Alabama on the 13th of February, 1908, and reported in 47 South. 274, to which we especially refer. It is too plain for serious discussion that the same principles of law will not apply in all the suits here involved, and just as plain that the same facts will not determine the liability in all the various suits. It would be needless to enter into any further detailed statement to show this. What we have quoted from the very able brief of the learned counsel for appellee has already demonstrated that beyond cavil.

Before passing from this discussion of the true principle on which the equitable jurisdiction to prevent multiplicity of suits in reason rests, we must call especial attention to the masterly opinion of Chief Justice Tyson, of Alabama, in the case of *Southern Steel Co. v. Hopkins et al.,* 47 South. 274, just above referred to. In the judgment of the writer of this opinion, this is the ablest discussion of the subject he has met with in any of the Reports, and we will therefore be pardoned for a liberal quotation from that opinion. That court says, at page 276:

"The question here, then, is: What is the principle upon which equity interferes to avoid a multiplicity of suits? In determining this, it may be borne in mind that the jurisdiction is not to be invoked when the remedy at law is plain, adequate, and

complete; and that no court has the right to infringe upon the wholesome doctrine of multifariousness which prevents a mingling in one suit of entirely distinct and separate causes of action between different parties. Subject to these restrictions, the principle and rule is that where numerous parties are jointly and severally claiming against one, or where one is claiming against may liable jointly or severally, and the same title or right of defense will be called in question, and will be determinative of the issue for or against all, a case for the interposition of equity to avoid a multiplicity of suits is made, without the aid of any independent equity. The fact that this unity of claim or defense frequently or generally arises from privity or joint action by or between the many affords an obvious instance of the application of the rule, and it has induced some to suppose that the junction and unity of interest calling for the application of the rule is limited to such cases. But the association and unity of interest in the many as to the other party may be brought about just as well by the nature of the transaction, or the situation and relation of the parties, independent of all privity or joint action. And therefore privity, or joint right or liability, although good examples for the application of the principle, afford no test for the propriety of its application.

"The case made by the bill in this case is this: An explosion in a coal mine killed one hundred ten persons. The several administrators of these persons have brought several suits against the appellant as the owner and operator for damages, insisting that its negligence was the proximate cause of the accident. The appellant in effect says, if these actions are allowed to proceed at law, it will be ruined in costs and expenses, though it be successful in every suit; that the plaintiffs are all insolvent, and thus could not pay the taxed costs against them, should they be unsuccessful; that the suits are pending in different courts, and will be called for trial in different courts at the same time; that by reason of this, and the necessity of having the same witnesses in each trial, it is impossible for the defendants to present a proper

defense to these multitudes of claims. The appellant says, moreover, that it has one and the same and a perfect defense or defenses to all these suits, which will be put forward in each case, and which will be determinative of all alike; and on this ground it is insisted that this is a plain case for the application of the jurisdiction of a court of equity to avoid a multiplicity of suits. We agree with this contention on principle.

"The first thing to obliterate from the mind in considering the question is that it is immaterial how the unity of title, claim, or defense is brought about. It is the factum of a single title against many, or a common defense against many, which is the foundation of the jurisdiction. A vested right of property and a vested cause of defense for protection against liability stand precisely on the same basis; and whence and how such right originated is wholly immaterial. 8 Cyc. 911; *Pritchard v. Norton,* 106 U. S. 125, 132, 1 Sup. Ct. 102, 27 L. Ed. 104. If the unfortunate persons who lost their lives by the explosion had jointly leased the mine, and their administrators had instituted several actions, as in this case, against the owner, it is conceded that the privity between the plaintiffs established by the contract would justify a bill to have the question of liability determined in one suit. But why? Only because a single and common defense would, if successful, determine all the suits. Suppose, however, the owner leased to a third party, instead of the operators, and the same accident happened, and a thousand suits were brought or threatened by solvent, or especially by insolvent, parties; what reason is there for, or could there be for, denying the jurisdiction to enforce in a single suit the common cause of defense against all? Ingenuity, we think, cannot discover a substantial distinction between the two cases, under which the owner in one instance may take shelter in a court of equity against the wrongful and vexatious suits, while in the other he must submit to financial ruin in defending a thousand vexatious actions at law."

The learned Chief Justice Tyson then goes on to show, by ref-

erence to the case of *Lord Tenham v. Herbert,* 2 Atk. 483, and other English cases, that that doctrine has been "followed and approved in England to the present day." He especially refers to the case of *Sheffield Waterworks v. Yoemans,* L. R. 2 Chan. 8, decided in 1866. Chief Justice Tyson then proceeds further to show that the same view, the correct modern view, was approved in *Hale v. Allinson,* 188 U. S. 77, 23 Sup. Ct. 244, 47 L. Ed. 380, and in *Bitterman v. L. & N. R. R. Co.,* 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171, decided in 1907, that great court in those two cases holding "that it did not require a common title, nor community of right or interest in the subject-matter, among the defendants, but only a common interest in the questions of law or fact in controversy." In concluding his opinion, Chief Justice Tyson reviews both the case of *Turner v. Mobile,* 135 Ala. 77, 33 South. 132, and *Tribette v. Railroad Co.,* 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642. In speaking of the case of *Turner v. Mobile,* he distinguishes that case from the fourth class of cases mentioned by Mr. Pomeroy; but he frankly says that there are many expressions in the opinion in *Turner v. Mobile* that cannot be approved, but that those expressions are not to be taken as decision, but the *Turner case* is to be looked at, as every case should be looked at, in the light of the exact facts before the court. He thus distinguishes that case, the case of *Turner v. Mobile.* Then, turning to the case of *Tribette v. Railroad Company, supra,* he says as follows:

"The case, however, of *Tribette v. Railroad Co.,* 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, is directly opposed to our views. That case we consider as overruled by the subsequent one in the same court of *Hightower & Crawford v. Railroad Co.,* 83 Miss. 708, 36 South. 83, 102 Am. St. Rep. 476, in which the court expressly approved the view repudiated in the *Tribette case.* It is said in the *Hightower case:* 'We think the doctrine announced by Pomeroy is sound and clearly established by the best-considered modern cases.'

After this repudiation of the *Tribette case* by the supreme court of Mississippi, we will not follow the reasoning of the opinion in that case to point out its deflection from and opposition, in our opinion, to the ancient, as well as modern, view of the extent of the jurisdiction of courts of equity in reference to multiplicity of suits. That jurisdiction is too well established and too beneficent, when wisely exercised, to be any longer called in question. It would be a strange *casus* in juridical evolution to meet the needs of society if there was no remedy against a party being vexatiously prosecuted at the same time by over seven thousand separate invalid claims held by insolvent plaintiffs, as in the *Sheffield Waterworks case,* L. R. 2 Chan. 8, when each case is founded upon the same facts, and when it is alleged and admitted, by the objection to the jurisdiction, that there is a defense common to all the claims. It is to avoid the monstrosity of such a result that the court of chancery extends its plenary jurisdiction to stay the proceedings at law until the question of liability can be determined in one suit, and therefore we hold that the bill in the case was well filed."

There are one or two other observations due to be made. First, it is said by one of the learned counsel for appellant, that the principal controversy in this case is whether the Mobile, Jackson & Kansas City Railroad Company is liable, or the Gulf & Ship Island Railroad Company is liable. This is an ingenious effort to save the case, but it cannot suffice so to do. The injunctions here were not sued out on the ground that the complainant, the Gulf & Ship Island Railroad Company was likely to be held liable twice for the same injury, because it was sued individually, and also jointly with the Mobile, Jackson & Kansas City Railroad Company. Indeed, there could be but one recovery, and that recovery against one railroad could be pleaded in bar of any other suit for the same injury. Besides, the mere doubt as to which railroad was responsible falls far short of entitling this jurisdiction to be exercised, in view of the manifest differences in other respects, both as to principles of law applica-

ble, and as to the different facts involved in the different suits by the different parties.    Again, it must be remembered that there is a very marked difference between a "multiplicity of suits" and "a multitude of suits."    It is not because there are so many suits that this jurisdiction is exercised; but it is only where, there being many suits, they may all be determined by the same principles of law and the proof of practically the same facts.    In other words, mere multitude of suits does not confer this jurisdiction, but it is conferred solely by the existence of a condition precedent, no matter how many suits there shall be, that all of them may be determinable by the application of the same principles of law, and by the establishment of practically the same facts.    See High on Injunctions, p. 329; *Murphy v. City of Wilmington,* 6 Houst. (Del.) 139, 22 Am. St. Rep. 345.    And especially see *Hale v. Allinson,* 188 U. S. 77, 23 Sup. Ct. 252, 47 L. Ed. 380.

We quote from this last case the following: "Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant.  · The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other; but this is only part of the matter.    The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly, or even nearly, alike.    If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name.    In reality it is a congeries of suits, with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons.    But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability.    Suppose A. to aver that his signature to the subscrip-

tion list was a forgery; what connection has that averment with B.'s contention that his subscription was made by an agent who had exceeded his powers, or with C.'s defense that his subscription was obtained by fraudulent representations, or with D.'s defense that he has discharged his full liability by a voluntary payment to the receiver himself, or with E.'s defense that he has paid to a creditor of the corporation a larger sum than is now demanded? These are separate and individual defenses, having nothing in common; and upon each the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right. But, even if the ground of diminished trouble and expense may sometime be sufficient, I should still be much inclined to hesitate before I conceded the superiority of the equitable remedy in the present case. Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The hearings are sure to be protracted. Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted. The testimony will soon grow to be voluminous. The expense of printing will be large. The cost of witnesses will not in any degree be diminished, and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law. We are in accord with the views thus expressed, and we therefore must deny the jurisdiction of equity, so far as it is based upon the asserted prevention of a multiplicity of suits." The above we think directly applicable to this case.

Finally, there is one other most important fact to which attention should be called, and that is that the Gulf & Ship Island Railroad Company, in all its bills, never once set up its defenses to any of the several actions. It merely says that it was not liable, without showing by any statement of facts, why it was not liable in any of the cases. Before any injunction should be issued in the exercise of this jurisdiction, the bills should show,

by a statement of the facts, plainly, that the complainant has a good cause of action, whether by way of claim or defense, either legal or equitable. It need not necessarily be an equitable cause of action. This principle is clearly stated in Pomeroy, Equity Jurisdiction, vol. 1, p. 365: "In the first place, and as a fundamental proposition, it is plain that prevention of a multiplicity of suits is not, considered by itself alone, an independent source or occasion of jurisdiction, in such a sense that it can create a cause of action where none at all otherwise existed. In other words, a court of equity cannot exercise its jurisdiction for the purpose of preventing a multiplicity of suits in cases where the plaintiff invoking such jurisdiction has not any prior existing cause of action, either equitable or legal—has not any prior existing right to some relief, either equitable or legal. The very object of preventing a multiplicity of suits assumes that there are relations between the parties out of which other litigations of some form might arise. But this prior existing cause of action, this existing right to some relief, of the plaintiff, need not be equitable in its nature"—citing *Storrs v. Pensacola & A. R. R. Co.,* 29 Fla. 617, 11 South. 226, 231; *Roland Park Co. v. Hull,* 92 Md. 301, 48 Atl. 366; *Turner v. City of Mobile,* 135 Ala. 73, 33 South. 133, 141; *Purdy v. Manhattan El. R. R. Co.* (Com. Pl.) 13 N. Y. Supp. 295; *Alleghany & K. R. R. Co. v. Weidenfeld,* 5 Misc. Rep. 43, 25 N. Y. Supp. 71, 76.

In the case of *Storrs v. Pensacola & A. R. R. Co.,* 29 Fla. 618, 11 South. 231, that able court said: "A reading of the bill discloses the fact that no community of title or right, or joint interest in the subject-matter of the suit, is alleged in the persons sought to be enjoined; but it does appear that there is a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind of relief asked against each individual person insisting on similar claims against appellee. In view of the fact that the bill fails to allege any sufficient defense, either at law or in equity, on the part of appellee in the suits instituted or threatened, it becomes unne-

cessary for us to decide whether or not its allegations are suffi-
cient in other respects to justify the interposition·of the court of
chancery by injunction.   The jurisdiction of chancery to pre-
vent a multiplicity of suits cannot be extended to confer upon a
party remedial rights where none of any kind existed before.
Its exercise necessarily assumes that the complainant in the class
of cases before us has some defense, either legal or equitable,
to the numerous suits instituted or threatened against him."

There need be no apprehension that this court will ever re-
cede from the doctrine approved by all the best-considered mod-
ern authorities, the doctrine as announced in *Pollard v. Okolona
Savings & Trust Co.,* 61 Miss. 293, or that we will hesitate to
approve the exercises of this equitable jurisdiction to prevent
multiplicity of suits, in a case falling within the limitations
marked out in that case, and in the later cases recently decided
by this court.   But, when this court is asked, on facts such as
appear in this record, to approve the exercise of this jurisdiction
in this sort of case, it is asking what no court of equity could
with any possibility be brought to consider for one moment.

Just look, in one closing view, at the incongruities of the sit-
uation.   Here Mrs. Barnes has brought two actions at law, she
being the .widow of the deceased engineer, an employee of the
Mobile, Jackson & Kansas City Railroad Company—one suit
against the Mobile, Jackson & Kansas City Railroad Company,
and one against the Mobile, Jackson & Kansas City Railroad
Company and the Gulf & Ship Island Railroad Company
jointly.   Her husband was an employee of the one company,
and not of the other.   Her rights of action, as regards the two
railroads, were distinct in many respects.   So Goldsby sues,
being an employee of the Mobile, Jackson & Kansas City Rail-
road Company, not an employee of the Gulf & Ship Island Rail-
road Company.   One of the defenses against Mrs. Barnes is the
contributory negligence of her husband.   That defense is not
pleaded against the other plaintiffs, and in some of these suits
manifestly could not be pleaded against some of the plaintiffs.

Mrs. Gilbert sues in the capacity of passenger on the Mobile, Jackson & Kansas City Railroad, and, it is to be specially noted, sues on an entirely distinct ground from any of the other suits, to wit, that the collision occurred from the negligence of the tower employee in not giving the proper signals to the engineers on the two engines on the two railroad trains. Here is a wholly different cause of action presented by Mrs. Gilbert from any in the entire list of cases. Again, the Mobile, Jackson & Kansas City Railroad Company sues the other railroad company for damages to its locomotive and cars, raising a question in which these two railroads are concerned, but with respect to which the other parties have no concern whatever.

And, lastly, the questions which arise in respect to section 4896, Code of 1906, under the facts in this record, are wholly different, according to the parties whose rights are being considered. In short, there is no possible view of the particular case made by the precise facts in this record under which the exercise of this equitable jurisdiction is entitled to be invoked. And let it always be kept religiously in mind that what a court always decides is the exact case made by the precise facts in the particular record examined.

From these views it follows that the decree of the court below was correct, and it is *affirmed.*