Statement of the case.

HIGHTOWER CRAWFORD ET AL. *v.* MOBILE, JACKSON AND KANSAS CITY RAILROAD COMPANY ET AL.

1. EQUITY JURISPRUDENCE. *Jurisdiction. Multiplicity of suits. Injunction.*

> Where a large number of persons were fraudulently induced to execute separate promissory notes to the same payee, the facts in respect to each of them being the same, equity has jurisdiction of a joint suit by them to enjoin the assignment of the notes and to have them surrendered and canceled.

2. SAME.

> Where a large number of the inhabitants of a city were fraudulently induced to give their separate notes to a railroad company upon the false representation that if they did not do so the railroad would not be constructed to their city, but to a near by rival town, but if they did give the notes it would be built to their city and not to the rival town, when in truth it was the intention of the company at the time to construct the main line of its road to the rival town and a branch to the city, for the building of which branch the contract had then been let, the notes were fraudulently obtained, and the makers had the right by a suit in equity to have them surrendered and cancelled.

FROM the chancery court of, second district, Perry county.

HON. STONE DEAVOURS, Judge.

Hightower Crawford and fifty-six other persons, appellants, were complainants in the court below; the railroad company and another, appellees, were defendants there. From a decree in defendants' favor dissolving an injunction, the complainants appealed to the supreme court.

The bill alleges that the city of Hattiesburg is situated on the line of the New Orleans and Northeastern Railroad, and is in the center of a large territory; that the towns of Ellisville and Laurel lie northeast of Hattiesburg, and are competitors for the

trade in the territory east and southeast of Hattiesburg; that the defendant railroad company had a charter to build a railroad from Mobile, Ala., to Jackson, Miss., Hattiesburg being near a direct line between the two cities, and that the building of said line was desired on the part of the people of Hattiesburg; that it had been built to within 40 miles of Hattiesburg from Mobile; that in 1901 defendant announced its purpose to extend this line of road northward, but stated it was uncertain as to whether it would be built via Hattiesburg or whether it should be deflected to the right and pass some fifteen or twenty miles from Hattiesburg and run into Ellisville or Laurel, and that the people of Hattiesburg were anxious to get the road built to that place, and were specially anxious that it should not be built to Ellisville or Laurel; that defendant railroad company was fully informed of all these matters, and, for the purpose of getting a donation from Hattiesburg citizens, the agent and attorney of said railroad company had a mass meeting called in Hattiesburg for the purpose of soliciting aid from them for an extension of said road, and that in said meeting he stated that he was authorized by the company to inform the people of Hattiesburg that defendant contemplated extending its road northward, and that it was undecided whether it would build by way of Hattiesburg, or whether it would deflect the road to the east by way of Ellisville or Laurel; that the people of both Ellisville and Laurel were anxious to secure the road, and had offered large donations if the road should be built to their town instead of to Hattiesburg; that the company was anxious to build the road to Hattiesburg, and that it would be built to Hattiesburg if the citizens would subscribe $35,000 in aid thereof; that it would not be built if said subscriptions were not made, but would be built to Ellisville or Laurel. The bill charges that this agent was specially asked whether the road would be built to Ellisville or Laurel in the event Hattiesburg subscribed the $35,000 demanded, and that he had emphatically replied that it would not be built to either if the sum of $35,000 was subscribed by

Hattiesburg, and that the purpose to build by way of Ellisville or Laurel would be abandoned. The bill further alleges that, but for the statements of defendant's agent in procuring said subscriptions, they never would have subscribed one cent to it, but, acting upon the representations of said agent, they agreed to sign and did sign notes aggregating $35,000, which were placed with defendant bank in escrow. The bill further avers that it was not true, as represented to complainants, that the road would not be built northward to Hattiesburg unless $35,000 were subscribed by Hattiesburg citizens, but the fact was that the contract for the building and completion of a branch of said road to Hattiesburg had already been let, before said statement was made, and that it would have been built to Hattiesburg whether said subscription was made or not; that said railroad company never abandoned its project to build its road southeast of Hattiesburg via Laurel, as it had agreed to do when complainants signed the notes, but that it intended at that time, and continued to carry out its said intention of building the main line of its railroad by way of Laurel. Complainants alleged that the representations upon the faith of which the notes were executed were untrue, and that defendant knew them to be untrue when they were made, and that complainants, relying on the truthfulness thereof, executed said notes, which they would not have done if said misrepresentations had not been made by defendant, and averred that the notes were obtained by fraud, as therein set forth, and prayed that the notes given by them, which were in the hands of the defendant Bank of Commerce of Hattiesburg, be canceled, and that the bank be enjoined from delivering them to defendant railroad company, and that the defendant railroad company be enjoined from transferring them to any one else. Defendant railroad company demurred to this bill, without first filing any answer denying the charges of fraud contained in the bill, and made a motion to dissolve the injunction. The motion to dissolve the injunction was sustained. The complainants were taxed with costs and attorneys' fees.

*Green & Green, N. C. Hill,* and *S. E. Travis,* for appellants.

The bill avers that the notes were in the hands of a single depository delivered in escrow, and are not binding upon the several appellants, because of:

1. Actual fraud, consisting in false, fraudulent misrepresentations of most material facts.

2. Want of consideration, as well as failure thereof.

Because of the fraud practiced each of the notes are voidable at the election of the several makers, and could be avoided, and each appellant, upon discovery of the fraud, selected to avoid his note, and thereby each became of no force or effect, by an election, exercised under facts dehors the face of the note, to be shown by evidence aliunde. These notes are in fact, as admitted by the demurrer, void under the actual facts, but upon their faces they are perfectly valid, binding and legal obligations, maturing at a time to be shown by matter of fact *aliunde.* These obligations, void in fact, by this subsequent election, but valid upon their faces, are now all outstanding in escrow, in the hands of a single individual, a party of whom the court has full jurisdiction.

Let it be carefully noted that the notes have never been delivered to the appellee railroad company, have never passed into its possession. Delivery is an essential element to the validity of a note; until delivery it has no life. Bigelow Bills and Notes, 174 *et seq.*

We have the case then of appellee railroad company, who has most wrongfully by fraud in fact enticed each appellant to execute his note and to make this deposit in escrow of notes which are now absolutely void, by matters apparent *aliunde,* and all the fraudulent and void instruments are now in the hand of the bank, undelivered and in such condition that said appellee, guilty of the gross acts of fraud as charged, has no right to them, and has no right to recover them of the depository and have them delivered to it for the purpose of vexatious litigation.

Has not this court jurisdiction at the suit of a single maker to enjoin delivery and to order a surrender and a cancellation, and especially where the questions of law and fact are common to 57 different parties complainant? Is the remedy solely at law, and is it plain and adequate and complete? But is it not also in equity? What form of action at law would determine this controversy?

Each appellant has the right to come into equity to have his note undelivered ordered to be surrendered and canceled because of fraud. This is an inherent jurisdiction in equity entirely independent of the remedy at law, a concurrent remedy where fraud is the ground of relief. *Waterworks* v. *Marks,* 16 So. Rep., 167; *Sessions* v. *Jones,* 6 How., 125; *Jackson* v. *Mitchell,* 13 Ib., 581.

Let it be noted here that there is no objection on the ground of misjoinder, only a jurisdictional question. The case at bar falls clearly within *Garrett* v. *Railroad Co.,* 1 Freeman Ch., 75.

The courts of equity have nearly always assumed concurrent jurisdiction of cases of fraud with courts of law, and have, when procured by fraud, ordered the evidence of the obligation to be surrendered and canceled. *Garrett* v. *Railroad Co.,* 1 Freeman Ch., 75; *Sessions* v. *Jones,* 6 How. (Miss.), 125; *Hooker* v. *Hester,* 7 Smed. & M., 779; *Griffin* v. *Shetoe,* 30 Ga., 300; *Hamilton* v. *Cummings,* 1 Johnson Ch., 519.

The jurisdiction in equity has existed since *Whittingham* v. *Thomburg,* 2 Vern., 206; *Goddard* v. *Garrett,* 2 Vern., 269; *Law* v. *Law,* 3 P. Williams, 392.

*Thompson* v. *Graham,* 1 Paige Ch. (N. Y.), 284, holds that equity has concurrent jurisdiction with courts of common law to order the cancellation and other instruments obtained by fraud. *Buxtor* v. *Broadway,* 45 Conn., 541; *Brittin* v. *Crabtree,* 20 Ark., 313; *Fuller* v. *Percival,* 126 Mass., 382; *Insurance Co.* v. *McLoom,* 14 Allen, 353; *Insurance Co.* v. *Dicks,* 114 Mich., 340.

"That it is not unwholesome, that an instrument should be de-

livered up, upon which a demand may be vexatiously made as often as the purpose of vexation may urge the party to make it." Why should the appellee wish to retain these notes unless for some unlawful purpose, they being admitted by the demurrer to be void? *Jackman* v. *Mitchell,* 13 Vern., 583; *Glastonbury* v. *McDonals,* 44 Vt., 454; *Johnson* v. *Henley,* 5 Munf. (Va.), 219; *Barney* v. *Warren,* 13 Hun. (N. Y.), 12.

The chancery court also has jurisdiction because the bill is one in the nature of an interpleader. The appellee, National Bank of Commerce, has these notes in possession, not claiming or asserting any right, title, or interest whatever in the notes in possession, but is a stakeholder pure and simple.

The appellee railroad company claims that the notes belong to it upon the allegation of general performance of all conditions precedent. The makers aver, on the contrary, that the notes were obtained by fraud, and that the notes were without consideration and void, and must be returned to them. The stakeholder is disintereseted, there are two sets of rival claimants, one on one side and fifty-seven on the other, each claiming and demanding that his note be returned and that instantly. Has equity no jurisdiction to prevent the complexed controversy here threatened?

It is beyond question that equity has jurisdiction at the instance of the stakeholder by a bill of interpleader, and the question here presented is whether the necessary facts are averred to have an interpleader at the instance of one of the claimants. *Webster* v. *Hall,* 60 N. H., 7; *Metcalf* v. *Gilmore,* 59 N. H., 417, 434; *Pollock* v. *Inst. Co.,* 61 Miss., 296; *Railroad Co.* v. *Garrison,* 81 Miss., 263; *Nevitt* v. *Gillespie,* 1 How., 110; *Forinquet* v. *Forstall,* 34 Miss., 96; *Hamilton* v. *College,* 52 Miss., 68; *Bishop* v. *Rosenbaum,* 58 Miss., 91.

*McIntosh & Rich* and *Ellis & Sullivan,* for appellees.

The bill does not show that the complainants have suffered "some pecuniary loss or injury as a natural consequence of the

conduct induced by the misrepresentations." 2 Pom. Sq. Jur., sec. 898.

Where it is apparent that the chancery court would have no jurisdiction it is not necessary to answer that part of the bill charging fraud, before a demurrer could be filed and heard." *Hamilton* v. *Lockhart,* 41 Miss., 460.

In regard to this proposition, it is the general doctrine that if the legal remedy by action and pecuniary judgment for damages would be sufficient, complete, and certain; that is, would do full justice to the litigant parties in the particular case, the concurrent jurisdiction of equity does not extend in such case. For example: Whenever an action at law will furnish an adequate remedy equity does not assume jurisdiction because an accounting is demanded or needed; nor because the contribution is sought from persons, jointly indebted; nor even the recovery of money held in trust, when an action for money had and received would lie. 1 Pom. Eq., sec. 178; 2 Pom. Eq. Jur., sec. 911; *Learned* v. *Holmes,* 49 Miss., 290; *Morton* v. *Trustees,* 8 Smed. & M., 773.

The prayer for cancelation of these notes cannot now give the court of equity jurisdiction, because the complainants do not need a cancellation of these notes in order that their rights may be fully protected. From the facts charged in the bill these notes never could pass into the hands of innocent purchasers so as to prejudice the defense that the complainants might have against the notes. 1st. That upon the face of the notes themselves they are non-negotiable paper under the laws of the state of Mississippi. 2d. That the bill is filed quite awhile after the notes, by their terms, became due and payable, thus destroying their negotiability, if they were ver negotiable, and preventing any person coming into possession of them from maintaining such suit as they set out in the prayer for injunction. The notes are non-negotiable because they contain a condition on their face, and also the danger from an innocent purchaser, as has already

been said, was eliminated at the time of the filing of the bill, for the reason that the notes were then past due.

It is said in Pom. Eq. Jur. (2d ed.), sec. 1377, that the particular instance in which this remedy (cancellation) is most given are instruments concerning land and negotiable paper before maturity, the legal remedy in these cases being, as a general rule, inadequate.

The bill charges that there was no consideration for the promise of the complainants to pay these notes. It seems to us that the consideration for this promise is plainly and distinctly stated in the notes themselves, that is, the building of the road to Hattiesburg, and the bill shows that this has been done within the time required. 24 Am. & Eng. Enc. Law (1st ed.), 326; 1 Parsons on Contracts, 482; 37 L. R. A., 406; *Gulf R. R. Co.* v. *Neely,* 64 Tex., 344; *Bushnell* v. *Lott,* 15 S. W. Rep.

The complainants are estopped to set up or change an agreement with the defendant railroad company with reference to not building this road to Laurel. The complainants signed a contract, which is evidenced by the notes, in which was written the main matter they desired, that is, the building of the road to Hattiesburg. If there was any other important thing that they desired the railroad company to do in connection with this matter they should have had that expressed in their writing also, and it is reasonable to presume that they would have done so if at that time they attached importance to any other agreement upon the part of the railroad company other than the agreement to build the road to Hattiesburg. *Thompson* v. *Bryant,* 75 Miss., 12; *Baum* v. *Lynn,* 72 Miss., 932; *Melburn Co.* v. *Ringgold,* 19 So. Rep., 675; *Field* v. *Stewart,* 78 Miss., 187; *Chicago, etc., Co.* v. *Higginbotham,* 29 So. Rep., 79, 24 Am. & Eng. Enc. Law, 341; *Blair* v. *Buttolph,* 72 Iowa, 31; *Miller* v. *Preston,* 4 N. Mex., 314; *Cooper* v. *McCrimmin,* 33 Tex., 383.

The decree of chancellor dissolving injunction was right, even though fraud was fully and properly charged in the bill, for the reason that confessing all of the allegations of the bill

the complainants have a full, complete, and adequate and speedy remedy at law. Bishop's Principles of Equity, 47; 1 Pom. Eq. Jur., 464, sec. 424; *Irwin* v. *Lewis,* 50 Miss., 363; Pom. Eq. Jur. (2d ed.), sec. 178, 911, 914; *Learned* v. *Holmes,* 49 Miss., 290.

The complainants are estopped from taking advantage of fraud of defendant, if fraud is sufficiently charged in the bill, on account of their acquiescence in the conduct of the defendant. 2 Pom. Eq. Jur., p. 236, sec. 805; *Ensley* v. *Bank of Piedmont,* 113 Ala., 467; *Brown* v. *Norman,* 65 Miss., 369; 9 Enc. Law and Pro., 437; Pom. Eq. Jur. (2d ed.), secs. 816, 817, 818; *Ga. Pac. R. R. Co.* v. *Brooks,* 66 Miss., 583; *Hanson* v. *Field,* 41 Miss., 712.

We now come to the question, whether the allegation of a multiplicity of suits would be sufficient to confer jurisdiction upon this court. It must be borne in mind that these complaints have no joint interest whatever in this case; they are not dependent, in any sense of the word, each upon the other. 1 Pom. Eq. Jur., 292, sec. 260; *Tribelle* v. *Ill. Cen. R. R. Co.,* 70 Miss., 182; *Turner* v. *Mobile,* 33 So. Rep., 143; *Thomas* v. *Canning Co.,* 34 C. C. A., 428, 92 Fed., 422; *Schulenberg-Becker Lumber Co.* v. *Town of Hayward,* 20 Fed., 422; *Scottish Union Ins. Co.* v. *Molham Co.,* 73 Fed., 66.

The allowance of counsel fees was proper under the rule announced by High on Injunctions, because it was necessary and proper for the defendant to employ counsel in this state, and an unusual number was not employed so as to burden the complainants with unnecessary damages.

Argued orally by *Marcellus Green,* for appellants.

WHITFIELD, C. J., delivered the opinion of the court.

There was no answer denying the fraud charged in the bill. The chancellor dissolved the injunction upon the theory, manifestly, that equity had no jurisdiction to try the case made by

the bill. The equitable jurisdiction to grant the relief prayed for in the bill, on the sole ground that it would prevent multiplicity of suits, all the different notes depending upon "a common state of facts and a common principle of law," is clearly established by *Pollock* v. *Okolona Savings Institution,* 61 Miss., at page 296, and *Railroad Co.* v. *Garrison,* 81 Miss., 263, 32 So. Rep., 996.

Fifty-seven different persons joined in executing notes for the amount of $35,000; the execution of the notes growing out of the same transaction, and their validity depending upon the same identical principles of law. We quoted and approved in 81 Miss., 263, 32 So. Rep., 996, the language of the court, through Chalmers, J., in *Pollock* v. *Okolona Savings Inst., supra,* and we now again reaffirm the doctrine announced at page 296 in *Pollock* v. *Okolona Savings Inst.* We think the doctrine announced by Pomeroy is sound, and clearly established by the best considered modern cases. But apart from this, the makers of these notes had the right to have them delivered up and canceled if they had been procured by fraud, as alleged in the bill. It is perfectly clear that these complainants had the right to have these notes delivered up and canceled, so as to avoid any possible future trouble, and that no adequate remedy existed at law. The case made by this bill is one which calls peculiarly for the exercise of the appropriate equitable jurisdiction.

*The decree is reversed, the injunction reinstated, and the cause remanded for further proceedings in accordance with this opinion.*