**LEAVENWORTH SAVINGS & TRUST CO. v. NEWMAN et al.**

Circuit Court of Appeals, Eighth Circuit.
November 30, 1927.

No. 7805.

1. **Corporations** ⊗⊃259(7)—Bill alleging default in mortgage, to which was attached guaranty agreement by stockholders, with prayer for accounting, stated ground for equitable relief.

Bill alleging default of mortgage containing guaranty agreement by stockholders of mortgagor company, and by its terms securing to guarantors certain rights in case of default in mortgage, with prayer for accounting of amount due plaintiff, and for determination of liability of each of defendants, *held* to state ground for equitable relief, notwithstanding essential element of cause of action was guaranty agreement, since such agreement was part of same transaction, which involved the execution and delivery of mortgage and constituted part and parcel thereof, and, when considered together, mortgage and guaranty agreement indicate that there was contemplated a possible contribution and account between guarantors.

2. **Descent and distribution** ⊗⊃138—Suit in equity is highly appropriate for recovery on mortgage and guaranty agreement necessitating accounting between heirs of guarantor (Rev. St. Mo. 1919, §§ 303, 2270).

Where recovery on mortgage and guaranty agreement executed by stockholders of mortgagor company will necessitate an accounting not only between heirs of one of guarantors and other defendants, but very likely necessitate an accounting between heirs themselves as to cause of action arising by virtue of Rev. St. Mo. 1919, §§ 303, 2270, making descent of both real and personal property subject to ancestor's debts, a suit in equity was highly appropriate.

3. **Equity** ⊗⊃51(1)—Avoidance of multiplicity of suits is not always sufficient to give equity jurisdiction.

Mere avoidance of multiplicity of suits is not sufficient in all cases to give a court of equity jurisdiction.

4. **Equity** ⊗⊃51(1)—Avoidance of multiplicity of suits, is sufficient for joining defendants in single equitable suit, when for convenience and interest of both plaintiff and defendants.

Where remedy at law available to plaintiff is not as prompt, practical, and efficient to attain ends of justice as a suit in equity, and convenience of both plaintiff and defendants will be best subserved by single suit in equity, and questions are involved common to all of the defendants, avoidance of multiplicity of suits is a sufficient and valid reason for joining defendants in a single equitable suit.

Appeal from the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Suit by the Leavenworth Savings & Trust Company against P. S. Newman and others. Decree of dismissal, and plaintiff appeals. Reversed, with directions.

Lee Bond, of Leavenworth, Kan. (H. M. Langworthy, Byron Spencer, and Frank H. Terrell, all of Kansas City, Mo., on the brief), for appellant.

C. W. German, of Kansas City, Mo. (Lee C. Hull and C. Z. German, both of Kansas City, Mo., on the brief), for appellees.

Before SANBORN and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree dismissing a bill on motion. From a memorandum of the court filed in the cause it appears that the ground of the dismissal was that plaintiff had a plain, adequate, and complete remedy at law. The bill alleges the following facts:

Plaintiff is a corporation organized and existing under the laws of the state of Kansas. Defendants, 24 in number, are all residents and citizens of the state of Missouri. The amount in dispute is more than $3,000. In 1915, J. F. Drais and all of the defendants, except William T. Drais, Ella St. John, Elisa Shackelford, Hattie Drais, Annie Lee Taylor, Rose Wilson, and James A. Drais, hereafter called heirs of J. F. Drais, organized a corporation under the laws of the state of Missouri, known as the McComas Hydro-Electric Power Company, hereafter called the power company, for the purpose of generating electricity and selling the same. The power company in August, 1915, executed and delivered its mortgage bonds in the sum of $35,000, and to secure the same executed and delivered to plaintiff and David A. Chestnut, as trustees, its trust deed covering property, real and personal, of said power company. As part of the same transaction, and for the purpose of further secur-

ing said bonds, said J. F. Drais and the present defendants, except the heirs of J. F. Drais, executed and delivered to plaintiff an instrument of guaranty, reading as follows:

"Guaranty.

"Whereas, McComas Hydro-Electric Power Company has by proper order of record directed the issuance of bonds to the sum of not to exceed thirty-five thousand dollars, and a mortgage upon its plant and property to secure the payment of the same; and

"Whereas, the bonds can be placed provided the bondholders are assured by the stockholders that the net income from the plant will be used to pay the bonds, and not to pay dividends, until the bonded indebtedness is all paid; and

"Whereas, it is deemed prudent to make this guaranty of payment of the bonds and interest thereon as they respectively fall due, so that the said bonds can be sold near home:

"Now, it is agreed by the undersigned stockholders of said company that they will and do hereby guarantee that all bonds issued under said order and all interest accruing on the same will be paid when the same become due, respectively, and that no dividends will be paid from the income of said plant until all said bonded indebtedness has been paid in full, and that all the income from said plant, except necessary running expenses, maintenance, taxes, and insurance, and salaries and wages of employés necessary in the business, shall be applied to a fund for the purpose of retiring said bonded indebtedness as fast as the same can be retired. No one signer's liability shall exceed thirty-five hundred dollars.

"In witness whereof, we set our hands this 21st day of August, 1915.

"[Signed].

| "P. S. Newman. | W. T. Manzey. |
| "Joe M. McComas. | T. B. Walters. |
| "Gordon & Morton. | C. B. Denman. |
| "J. T. Jackson. | Nick Shackelford. |
| "John T. Hanley. | C. Q. Cumberford. |
| "W. T. Elliott. | J. F. Drais. |
| "M. S. Downs. | Fannie L. Johnson. |
| "R. H. Gunn. | J. T. Noland. |
| | "A. A. Hillix." |

February 4, 1920, J. F. Drais died intestate, leaving as his sole heirs the seven defendants above designated as such heirs. December 19, 1922, the estate of J. F. Drais was duly closed by order of the probate court. At that time there had been no default in the payment of interest under the mortgage of the power company, and, though plaintiff filed claim against the estate, there was no

recovery on the same, nor has plaintiff received any sum from the heirs of the estate. On the 9th of February, 1922, David A. Chestnut died, and thereafter John W. Coots was duly appointed trustee as his successor. August 4, 1923, the power company defaulted in the payment of interest on said bonds, and, said default continuing, the trustees in accordance with the provisions of the deed of trust declared all of the bonds due, and thereafter duly foreclosed the deed of trust and made sale of the property covered thereby. After applying the proceeds to the payment of expenses and upon the mortgage debt, there remained due a balance of $36,-918.46. Plaintiff is now owner of the bonds. Certain payments have been made by some of the defendants under the guaranty agreement. The balance remaining due and unpaid under said agreement is $6,985.41, with interest since February 16, 1924.

The bill further alleges that there are involved in the suit questions touching the validity of the mortgage and bonds, and the legality of the foreclosure, an accounting of the proceeds of the sale, and of the payments under the guaranty agreement. The mortgage deed, which was attached to and made a part of the bill, was in the usual form. It contained, among other recitals, the following:

"And whereas, the stockholders of said company, in order to procure the said amount of money have agreed to guarantee the payment of said bonds and the interest thereon, by their written guarantee, which is to be deposited with, and held by, the Leavenworth Savings & Trust Company, for the benefit of the holders of said bonds, which said guarantee is as follows, to wit."

This recital was followed by a copy of the agreement. The mortgage deed by its terms secured to the guarantors certain rights in case of default in the mortgage, such as the right to have the whole debt declared due by the trustees because of the default of interest, the right to demand foreclosure and sale by the trustees, and the right to have the trustees take possession in case of default.

The prayer of the bill is that an accounting be had of the amount due plaintiff; that the liability of each of the defendants be determined; that judgment be entered against each of the defendants for the amount of his liability; that, if any defendant shall have paid more than his proportionate share of the guaranty liability, contribution be enforced against his codefendants. It is the contention of appellees that the bill contain-

ing the foregoing allegations presented no ground for equitable relief, but, on the contrary, showed that plaintiff had an adequate and complete remedy at law by bringing separate actions upon the guaranty agreement against each of the guarantors.

[1] We cannot agree with this contention. It is true that an essential element of the cause of action set up in the bill is the guaranty agreement signed by the stockholders of the power company. But the cause of action is not based upon that guaranty agreement alone. That agreement was part of the same transaction which involved the execution and delivery of the mortgage. In fact, the guaranty agreement was part and parcel of the mortgage deed and was bodily contained therein. The trust company was not only one of the trustees under the mortgage, but it also held this guaranty agreement as trustee for the benefit of the bondholders. This appears from the agreement itself. The signers of the guaranty agreement had valuable rights secured to them by the terms of the mortgage. The guaranty agreement itself recites the issue of the bonds and the making of the mortgage. Further, the guaranty agreement could not be resorted to for the purpose of obtaining payment of the mortgage debt until there was default in the mortgage, either principal or interest. The guaranty agreement was thus closely tied up with the mortgage. Still further, the amount of the mortgage and the amount of the guaranty agreement when considered together, indicate that there was contemplated a possible contribution and accounting between the guarantors. The total amount of the issue of bonds was $35,000. The bonds matured in ten years, with an option of payment secured to the power company at the end of five years. The total guaranty under the agreement was $63,000, a sum greater than the principal and interest of the bonds. The liability of each guarantor, however, was limited to $3,500. All of these facts appear from the bill, since the bill sets out at length both the mortgage and the guaranty agreement. As above stated, the bill further sets up default in the mortgage, a foreclosure thereof, certain payments made by some of the guarantors on the guaranty agreement, and a balance due.

Before any recovery can properly be had against any one of the guarantors, plaintiff must show the execution and delivery of the mortgage, the execution and delivery of the guaranty agreement, the default in the mortgage, the foreclosure, the amount received thereby, the amounts already received from the several guarantors under the guaranty agreement, and the amount due after applying such sums upon the mortgage debt. It cannot be assumed that these matters will not be controverted. If they are controverted, the issues will involve the validity of the mortgage and of the guaranty agreement, the validity of the foreclosure, an accounting of the proceeds of such foreclosure, an accounting with the several guarantors of the sums paid by them under the guaranty agreement, and, either before or after recovery, an adjustment or contribution between the several guarantors. Several of the foregoing matters are of equitable cognizance. It also seems apparent from the allegations of the bill that the enforcement of the maximum liability against the guarantors will not be necessary.

[2] Further, in so far as recovery is sought against the heirs of J. F. Drais, who have received distributive shares of his estate, the cause of action arises by virtue of the provisions of the statutes of Missouri which make the descent of both real and personal property subject to the debts of the ancestor. Rev. St. Mo. 1919, §§ 303, 2270; Higbee v. Billick, 244 Mo. 411, 424, 148 S. W. 879; City of Springfield v. Clement, 205 Mo. App. 114, 123, 225 S. W. 120; Rogers v. Johnson, 125 Mo. 202, 216, 28 S. W. 635. Similar statutes exist in many of the states. Under these statutes it is generally held that the heirs and distributees may be proceeded against directly, where the cause of action did not arise or accrue, so as to become provable and enforceable, until after the administration of the estate had been closed. 18 C. J. p. 954, § 308; Rankin v. Herod (C. C.) 140 F. 661; Rankin v. Big Rapids (C. C. A.) 133 F. 670; Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069; State ex rel. Brouse v. Burnes, 129 Mo. App. 474, 107 S. W. 1094; Walker's Adm'r v. Deaver, 79 Mo. 664, 673; Chitty v. Gillett, 46 Okl. 724, 148 P. 1048, L. R. A. 1916A, 1181, and note, 1185.

The nature of the suit by the creditor against the heirs and distributees depends upon the nature of the claim, the relief sought, and the statutes of the particular jurisdiction. But a suit in equity is generally held to be the proper, if not the sole, remedy. 18 C. J. p. 955, § 309; Payson v. Hadduck, Fed. Cas. No. 10862; Kirtley v. Holmes (C. C. A.) 107 F. 1, 52 L. R. A. 738; Johnson v. Culbertson (C. C.) 79 F. 5; Barlow v. Delany (C. C.) 36 F. 577; Id. (C. C.) 40 F.

97; City of Springfield v. Clement, supra; Beekman v. Richardson, 150 Mo. 430, 435, 51 S. W. 689; note L. R. A. 1916A, 1189.

Of course, in jurisdictions where there is but one form of action, the question of the nature of the suit becomes of minor importance. State ex rel. Brouse v. Burnes, supra. In the federal courts, however, the distinction between actions at law and suits in equity still exists. In the case at bar it is to be noted that recovery on the cause of action against the heirs of J. F. Drais will not only necessitate an accounting between them and the other defendants, but may very likely necessitate an accounting between the heirs themselves. A suit in equity is therefore highly appropriate.

[3] It is doubtless true, as appellees contend, that the mere avoidance of a multiplicity of suits is not sufficient in all cases to give a court of equity jurisdiction. Hale v. Allinson, 188 U. S. 56, 79, 23 S. Ct. 244, 47 L. Ed. 380; St. Louis, I. M. & S. R. Co. v. McKnight, 244 U. S. 368, 375, 37 S. Ct. 611, 61 L. Ed. 1200; Kelley v. Gill, 245 U. S. 116, 38 S. Ct. 38, 62 L. Ed. 185; Carey v. McMillan, 289 F. 380 (C. C. A. 8); Investors' Guaranty Corporation v. Luikart, 5 F. (2d) 793 (C. C. A. 8).

[4] The present suit, however, does not come within such rulings. In those cases jurisdiction in equity was denied, because no equitable issues were involved, and there was no common and decisive point of litigation between plaintiff and defendants; but there existed a mere congeries of separate legal causes of action, although in some instances they grew out of one broad business transaction. In the case at bar some of the numerous questions involved are of equitable cognizance; many of them are common to all of the defendants. Each defendant is further interested in the amount recovered from each of his codefendants. The remedy at law available to plaintiff is not as prompt, practical, and efficient to attain the ends of justice as a suit in equity. On the face of the bill, at least, the convenience of both plaintiff and defendants will be best subserved by a single suit in equity. Under such circumstances, the avoidance of a multiplicity of suits is a sufficient and valid reason for joining the defendants in a single equitable suit. Hayden v. Thompson, 71 F. 60 (C. C. A. 8); Wyman v. Bowman, 127 F. 257 (C. C. A. 8); Lake Charles Rice Milling Co. v. Pacific Rice Growers' Ass'n (C. C. A.) 295 F. 246.

In Wyman v. Bowman, supra, this court, speaking by Circuit Judge Sanborn, said at pages 263, 264: "This court has repeatedly held—and that holding is sustained by the great weight of authority—that a bill in equity against several defendants separately liable either at law or in equity may be maintained, in order to avoid a multiplicity of actions at law or of suits in equity, whenever there is a common and decisive point of litigation between the complainant and the defendants, the complainant has no remedy at law as prompt, practical, and efficient to attain the ends of justice as the suit in equity, and the convenience of the complainant in pursuing the single suit in equity is not overcome by the deeper inconvenience of such a course to the defendants"—citing numerous cases.

In the Lake Charles Rice Milling Co. Case, supra, the court said (speaking of that case): "But, even if there were no necessity for an accounting in equity, other grounds for the interposition of a court in equity sufficiently appear in the allegations of the bill. From the facts alleged it seems obvious that, if there is a defense to the appellant's demand, it must be a defense which is common to all the appellees. This is not a mere conglomeration of actions at law for the recovery of money involving different issues and different proofs. The appellees here are not idle spectators as to every cause of action except their own. On the contrary, each of them has an immediate interest in the causes of action against his codefendants and in the questions of law and fact involved."

The case at bar may be characterized in much the same way. It is not a mere aggregation of law actions having no common point of litigation. The cause of action against each of the defendants arises out of the same transaction, viz. the giving of the mortgage and the guaranty agreement. Questions which may arise as to the validity of the two instruments are of common interest to all defendants. Questions touching the construction to be placed upon the guaranty agreement are common to all of the defendants. An accounting to determine which defendants have made payments and to what extent is of common, vital interest to all defendants. Eventually the question of contribution between the various defendants will also arise. Some of these questions may be purely legal, but others are plainly of equitable cognizance.

These numerous questions of common interest far outweigh in importance any particular question which may pertain to some one, or to part of the defendants only. In Hale v. Allinson, supra, the court in its opin-

ion said at page 77 (23 S. Ct. 252): "Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any."

After careful consideration, we are clearly of opinion, for the reasons above outlined, that the bill in the case at bar discloses grounds for equitable relief. Jurisdiction on the equity side of the court should, therefore, have been retained.

The decree is accordingly reversed, with instructions to reinstate the bill, and to take such further proceedings as may be advisable, not inconsistent with the views herein expressed.