**FIRST STATE BANK v. CHICAGO, R. I. & P. R. CO.**

No. 9599.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1933.

Ingram & Moher, of Stuttgart, Ark., for appellant.

Thomas S. Buzbee, of Little Rock, Ark., for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Appellee, herein termed plaintiff, filed a bill in equity in the United States District Court for the Eastern District of Arkansas against Bankers' Trust Company, Union Trust Company, and First State Bank (corporations of Arkansas) as defendants (so designated here), asking that they be restrained from subjecting the plaintiff to a multiplicity of suits and to vexatious litigation by the bringing of separate suits to recover from plaintiff on each of forty-eight alleged forged bills of lading. A motion to dismiss was made by defendants on the grounds that the court had no jurisdiction to hear the cause, that the bill showed on its face a lack of equity, and that plaintiff had a plain, adequate, and complete remedy at law. The court overruled the motion and entered judgment for plaintiff granting the prayer for an injunction. Defendants, Bankers' Trust Company and Union Trust Company do not appeal. The First State Bank is the only appellant; proper severance having been made. As the case was determined upon the bill and

motion to dismiss, the facts properly pleaded in the bill must be taken as established. Merinos Viesca y Compania v. Pan American P. & T. Co. (D. C. N. Y.) 49 F.(2d) 352; Central Shoe Co. v. Central Shoe Co., Inc. (D. C. Mass.) 58 F.(2d) 680; Lucas v. Federal Reserve Bank of Richmond (C. C. A. 4) 59 F.(2d) 617.

The bill alleges that plaintiff operates a line of railroad through fourteen states, including the state of Arkansas; that defendants are corporations, two of them having places of business in Little Rock, and one in Stuttgart, Ark.; that a partnership engaged in business at Stuttgart under the firm name and style of McGill Bros. Rice Mill forged, or caused to be forged, some forty-eight bills of lading purporting to have been issued by plaintiff at Stuttgart and covering supposed shipments of rice by said McGill Bros. Rice Mill; that the Bankers' Trust Company is the owner of twenty-eight of said bills purporting to cover shipments of the value of $79,316, and has made demand upon plaintiff for the payment of said amount; that defendant Union Trust Company is the owner of six of said bills purporting to cover shipments of the value of $14,690, and has likewise made demand upon plaintiff for the payment of said amount; that defendant First State Bank is the owner of fourteen of said bills purporting to cover shipments of the value of $31,400, and it also has made demand upon plaintiff for payment of said amount; that said bills of lading were made to resemble genuine bills of lading, and were made apparently negotiable in form in the manner provided by the acts of Congress; that each of said bills purports to represent a separate and definite liability against plaintiff for the value of rice pretended to be covered thereby and to represent a separate and distinct cause of action against plaintiff, and on which separate suits can be brought in any county in the state of Arkansas or in any of the fourteen states through which plaintiff operates a line of railroad; that the demands of each of the defendants could have been made the basis of one suit in the Eastern District of Arkansas, but that said Bankers' Trust Company, a defendant, has brought two separate suits against plaintiff, based on two of said forged bills of lading, in the circuit court of Calhoun county, Ark., some one hundred miles from Stuttgart where the alleged bills of lading were forged, and where plaintiff cannot compel the attendance of witnesses who live at Stuttgart and have knowledge of the facts relating to the forgery, on account of the distance, as under the laws of Arkansas a witness cannot be compelled to attend a trial except in the county of his residence or in an adjoining county; that in one of these suits defendant Bankers' Trust Company, seeks to recover $2,640 for the value of rice alleged to have been covered by a bill of lading, and in the other $2,670 for the value of rice likewise covered by another bill. The bill sets forth that it is necessary to the proper conduct of plaintiff's business as a carrier in interstate commerce that the potential liability of the carriers on these forged bills of lading be held for naught, and that to require litigating the question in separate suits based on each of said forged bill of lading and in separate jurisdictions will constitute an undue and unreasonable burden on interstate commerce. It is alleged therein that, unless defendants are restrained, they or their assigns will subject plaintiff to a multiplicity of suits and to burdensome and vexatious litigation by bringing separate suits on each alleged cause of action in courts far removed from Stuttgart, where it is claimed said causes of action accrued and in courts which have no jurisdiction to compel the attendance of witnesses necessary to plaintiff's defense, and that plaintiff has no adequate remedy at law. The prayer for relief is this: "Wherefore, inasmuch as plaintiff has no adequate remedy at law, and, in order to avoid a multiplicity of suits, plaintiff prays that the defendants and each of them be enjoined from negotiating or assigning any of said bills of lading, from prosecuting suits based upon said bills of lading elsewhere than in this Court; that they be required to submit said alleged bills of lading to this Court, and that the same be cancelled and held for naught; that, pending a final hearing hereof, a temporary injunction be granted as herein prayed."

■ The first question raised is that, as none of the alleged bills of lading held by appellant exceed the sum of $3,000, the jurisdiction of the federal court must fail. Some of the purported bills of lading held by defendant Bankers' Trust Company do exceed $3,000, but that is of no avail. The amount in controversy between plaintiff and the appealing defendant must exceed $3,000 in order to give jurisdiction, and the requirement as to jurisdiction is the same for cases in equity as for cases at law. Delaware Consol. Oil Co. v. Randall et al. (D. C. Okl.) 34 F.(2d) 666; Adam Schumann Associates, Inc., v. City of New York (C. C. A. 2) 40 F.(2d) 216. It is conceded by plaintiff in its complaint that each of the bills of lading represents "a separate and distinct liability" against plaintiff,

and "a separate and distinct cause of action." Collectively the fourteen bills aggregate $31,-400. Separately no one equals the jurisdictional amount.

The general rule is that jurisdiction is not conferred upon the federal court by joining claims against distinct and separate defendants, no one of which equals the jurisdictional amount. Walter v. Northeastern Railroad Co., 147 U. S. 370, 13 S. Ct. 348, 37 L. Ed. 206; Northern Pacific R. R. Co. v. Walker, 148 U. S. 391, 13 S. Ct. 650, 37 L. Ed. 494; Citizens' Bank of Louisiana v. Cannon, 164 U. S. 319, 17 S. Ct. 89, 41 L. Ed. 451. Nor can several plaintiffs joining in a suit against one or more defendants aggregate for jurisdictional purposes separate and distinct claims, no one of which is equal to the jurisdictional amount, although, when several plaintiffs "unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." Troy Bank v. Whitehead & Co., 222 U. S. 39, 40-41, 32 S. Ct. 9, 56 L. Ed. 81; Wheless v. St. Louis et al., 180 U. S. 379, 21 S. Ct. 402, 45 L. Ed. 583; Rogers v. Hennepin County, Minn., 239 U. S. 621, 36 S. Ct. 217, 60 L. Ed. 469; Scott et al. v. Frazier et al., 253 U. S. 243, 40 S. Ct. 503, 64 L. Ed. 883.

In Woodmen of the World v. O'Neill, 266 U. S. 292, 45 S. Ct. 49, 69 L. Ed. 293, an exception to the general rule is noted, where the bill alleged that the various defendants' claims were baseless and were being prosecuted in pursuance of a conspiracy to embarrass and ruin plaintiff; the amount of the particular claims not being disputed, and the validity of all depending on the same issue. The court held that this situation tied together the claims as one claim for jurisdictional purposes. The same doctrine is laid down in McDaniel v. Traylor, 196 U. S. 415, 25 S. Ct. 369, 49 L. Ed. 533; McDaniel v. Traylor, 212 U. S. 428, 29 S. Ct. 343, 53 L. Ed. 584.

It may be stated as a conclusion from these cases that jurisdiction may not be conferred by aggregating separate and distinct claims of separate and distinct parties whether in behalf of several plaintiffs joining in a suit against one or more defendants or in behalf of a single plaintiff seeking to enjoin the prosecution against it by several defendants of separate and distinct claims. As the other two defendants are eliminated on this appeal, the question of jurisdiction resolves into one of aggregating the separate and distinct claims of a single party as distinguished from aggregating the separate and distinct claims of separate and distinct parties. We refer to some of the decisions on this question.

This court held in Fitchett et al. v. Blows et al. (C. C. A. 8) 74 F. 47, that an action in equity could be maintained to collect several promissory notes, each being under the jurisdictional amount, where the aggregate of said notes exceeded said amount, and to foreclose separate mortgages securing the notes separately on separate pieces of property. To the same effect is Heffner v. Gwynne-Treadwell Cotton Co. (C. C. A. 8) 160 F. 635, 638, where the court said, "the requisite jurisdictional amount is the aggregate of the judgment prayed for."

In Edwards v. Bates County, Mo., 163 U. S. 269, 16 S. Ct. 967, 41 L. Ed. 155, the action was on two $1,000 bonds and interest coupons. At that time the amount in controversy to confer jurisdiction was required to exceed $2,000 exclusive of interest and cost. The court said at page 273 of 163 U. S., 16 S. Ct. 967, 969:

"The claim made by the plaintiff on the coupons was in no just sense accessory to any other demand, but was in itself principal and primary. In ascertaining, therefore, the jurisdictional sum in dispute, the sum of the coupons should have been treated as an independent, principal demand, and not as interest; and in holding otherwise the lower court erred to the prejudice of the plaintiff in error.

"As the face of the bonds amounted to the sum of $2,000, the addition of the demand based upon the coupons brought the sum in dispute within the jurisdiction of the circuit court."

In Yates v. Whyel Coke Co. (C. C. A. 6) 221 F. 603, the action was on a contract for the monthly delivery by plaintiff to defendant of specified quantities of coke, tender of which the defendant had wrongfully refused to accept. In affirming the judgment appealed from in favor of the plaintiff, the court, although finding that by the terms of the contract each month's deliveries were to be treated as a separate and independent contract, nevertheless concluded, at page 606: "If it be true that the plaintiff should have pleaded as a separate cause of action the damages incurred for each month the contract was alive, jurisdiction over the subject-matter of the suit was not wanting, although none of the claims exceeded a few hundred dollars in amount, for the reason that their aggregate sum, for which judgment was prayed, was

largely in excess of $3,000, exclusive of interest and costs. The requisite jurisdictional amount is controlled, not by state legislation, as defendant would have it appear, but by the federal law, and is determined by the aggregate sum for which judgment is sought, and not by the amount named in each cause of action."

In Judson v. Macon County, 14 Fed. Cas. page 16, No. 7,568, where there was a suit upon several coupons each one below $500.00, it was claimed the matter in dispute was the amount of each coupon and no more. Judge Dillon said: "The premises do not warrant the deduction sought to be drawn from them. * * * Since it is admitted that suit upon all the coupons was properly brought, and as the amount claimed upon all exceeds $500, it is plain to a demonstration that the matter in controversy is the amount claimed upon all, and not upon any one coupon."

In Commercial Nat. Bank of Los Angeles v. Catron (C. C. A. 10) 50 F.(2d) 1023, the plaintiff bank had sued on two separate promissory notes, one involving less than the required jurisdictional amount, and a demurrer to the count based on that note had been sustained. In reversing this ruling the Circuit Court of Appeals said, at page 1025, through Judge Cotteral: "There was also manifest error in sustaining the demurrer to the second count. It is true the note there pleaded did not of itself reach the required jurisdictional amount in controversy. But the rule is well settled that all the demands in suit are to be taken together for purposes of jurisdiction, and it is not lost where upon a trial either a defense is established or the recovery is less than is required to be alleged when suit is brought."

In Central Paper Co. v. Southwick (C. C. A. 6) 56 F.(2d) 593, 596, the court said: "The cases uniformly hold that Congress did not intend that the assignee clause should restrict or limit the jurisdiction of the federal courts as to assigned claims upon the ground that such claims were below the jurisdictional amount. The cases also uniformly hold that an assignee of claims below the jurisdictional amount, the same having been assigned absolutely, and the assignors being nonresidents of the state, may aggregate his assigned claims to make up the jurisdictional amount. There is not a discordant note in the decisions."

A suit on all of appellant's fourteen claims could have been brought at law by virtue of the Arkansas joinder statute, Crawford & Moses' Digest of the Laws of Arkansas, § 1080, or it could have been brought in equity, assuming grounds for equitable jurisdiction to exist, and the amount in controversy in either case between defendant-appellant and plaintiff would have been $31,400, the aggregate total of the fourteen claims. Is the amount in controversy any different by reason of the fact that plaintiff began the suit instead of defendant-appellant? We see no reason for any such distinction. Plaintiff is asking for a determination of the validity of these fourteen claims and relief from the expense and vexation of having to defend a multiplicity of suits. The action is to cancel, not one of the bills of lading, but all of them. The necessary result of the litigation, were plaintiff successful, would be to cancel a claimed indebtedness of $31,400. That is the amount in dispute and in controversy between appellant and appellee in this case. We are satisfied the requisite jurisdictional amount exists.

Defendant-appellant argues that the trial court erred in holding equity jurisdiction, claiming that the bill shows on its face that plaintiff is not entitled to the relief prayed for, and that it has an adequate and complete remedy at law. While appellant is the only defendant prosecuting this appeal, the existence of coparties in the trial court, and the facts alleged concerning them, may be considered as bearing on the question of equity in the complaint. The suit below was a multiparty suit. Therefore the rule announced by some of the courts, New York Life Ins. Co. v. Marshall (C. C. A. 5) 23 F.(2d) 225, that where relief is asked by a single plaintiff from a multiplicity of suits by a single defendant, equity will not take jurisdiction, unless there has been a decision in plaintiff's favor in at least one action at law, does not apply, and that question may be eliminated.

A legal conflict has raged for years over the question of whether equity has jurisdiction on the ground of preventing a multiplicity of suits where there exists merely a community of interest in questions of law and fact in the controversy, or whether there must be, in addition to preventing a multiplicity of suits, some recognized ground of equity jurisdiction.

Pomeroy in the first edition of his Treatise on Equity Jurisprudence, at the conclusion of his discussion on bills of peace, says (section 269): "Notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body

of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' no 'community or right,' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body."

Chief Justice Campbell in Tribette v. Illinois Cent. R. Co., 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, combated this proposition with unusual vigor. We quote from his opinion: "There must be some recognized ground of equitable interference in the subject-matter of the controversy, or common right or title involved, to warrant the joinder of all in one suit; or there must be some common purpose in pursuit of a common adversary, where each may resort to equity, in order to be joined in one suit; and it is not enough that there 'is a community of interest merely in the question of law or of fact involved,' etc., as stated by Pomeroy in section 268."

In Pomeroy's Equity Jurisprudence (4th Ed.), notes to section 264, the opinion in the Tribette Case is designated as "sensational in many of its statements," and is reviewed at length. The following from Pomeroy's Equity Jurisprudence (4th Ed.) § 251 (a), is necessary to make clear the Pomeroy theory: "Of course there must be some common relation, some common interest, or some common question, or else the decree of a court of equity, and the relief given by it in the one judicial proceeding, could not by any possibility avail to prevent the multiplicity of suits which is the very object of its interference." The troublesome and rather checkered course of the Tribette Case in the Mississippi courts shows how bothersome the question has been to the courts. In Illinois Cent. R. Co. v. Garrison, 81 Miss. 257, 32 So. 996, 95 Am. St. Rep. 469, the Supreme Court of Mississippi distinguished it. In Hightower Crawford et al. v. Mobile, J. & K. C. R. Co. et al., 83 Miss. 708, 36 So. 82, 83, 102 Am. St. Rep. 476, it reversed itself as to the rule in the Tribette Case, and held that equitable jurisdiction to grant relief prayed for in the bill on the sole ground that it would prevent a multiplicity of suits was sufficient; there being "a common state of facts and a common principle of law." The Supreme Court of Mississippi followed the Pomeroy doctrine in Tisdale v. Insurance Co. of North America

et al., 84 Miss. 709, 36 So. 568; Whitlock v. Yazoo & M. V. R. Co., 91 Miss. 779, 45 So. 861; Gulf & S. I. R. Co. et al. v. Barnes et al., 94 Miss. 484, 48 So. 823, and in Cumberland Telephone & Telegraph Co. v. Williamson, 101 Miss. 1, 57 So. 559, it practically overruled the cases which had overruled the Tribette Case, and reaffirmed its adherence to the doctrine of that case, referring to the Pomeroy doctrine as heresy.

In Watson v. Huntington (C. C. A. 2) 215 F. 472, the Court of Appeals of the Second Circuit followed the Tribette Case. There was a strong dissenting opinion by Circuit Judge Rogers, long recognized as a leading authority on equity jurisprudence, in which he argues that community of interest in the questions of law and fact is sufficient to confer equitable jurisdiction.

A rather late case dealing with this subject is Georgia Power Co. v. Hudson (C. C. A. 4) 49 F.(2d) 66, 69. The court there says with reference to the right of a court of equity to enjoin the prosecution of actions at law: "We think the correct rule, and the one sustained by the weight of authority, is that community of interest among the several parties in the questions of law and fact involved is not sufficient to confer jurisdiction upon the court to enjoin the prosecution of such actions, though they be brought against the same defendant and involve the same state of facts. As a basis for such jurisdiction in equity, there must be some recognized ground of equitable interference, or some community of interest in the subject-matter of controversy, or a common right or title involved, or some common purpose in pursuit of a common adversary. None of these exists in the case of actions for damages brought by numerous plaintiffs, although all may arise out of the same wrongful act and involve the same principles of law." This case seems to follow the rule of the Tribette Case. While the court found against equitable jurisdiction, it also denied jurisdiction on the grounds that none of the said actions involved $3,000, and because it was a suit against pending state actions.

In Fish et al. v. Kennamer (C. C. A. 10) 37 F.(2d) 243, 246, the court said: "Moreover, it is a general principle that equity will take jurisdiction on the sole ground of preventing a multiplicity of suits, and in such a case an objection that there has been a misjoinder of parties will not be sustained."

In Warren Bros. Co. v. Kibbe (D. C. Or.) 43 F.(2d) 582, 584, it was held that: "A court of equity may exercise jurisdiction on

behalf of a single party against a numerous body of separate claimants, although there is no common title or interest in the subject-matter among those individuals, but where there is merely a community of interest among them on questions of law and facts involved in a general controversy."

In Louisville, N. A. & C. Ry. Co. v. Ohio Val. Improvement & C. Co. (C. C. Ky.) 57 F. 42, Judge Lurton discusses the question, and says at page 45: "There has been much conflict of authority as to the circumstances which will justify a court of equity in taking jurisdiction to prevent a multiplicity of suits; but an examination of numerous authorities brings me to the conclusion that where a complainant may be subjected to a multitude of separate suits by separate claimants, and the judgment in one case would not be conclusive in others, a case arises for equitable jurisdiction, if the defendants have a community of interest in the questions at issue, and in the kind of relief sought, by reason of the common origin of their several claims."

■ Many courts have hesitated to hold that multiplicity of suits alone is ground of equitable jurisdiction, because in that way the right to trial by jury might be destroyed. The answer to that is that to sustain a suit in equity in the federal courts it must appear there is no plain, adequate, and complete remedy at law, and, if the remedy at law is not adequate, the right to a jury trial does not exist. That point is always involved in the question. If prevention of multiplicity of suits confers equitable jurisdiction, no right to a jury trial exists. The avoidance of unnecessary suits should be much desired by litigants and taxpayers. In Munson Inland Lines, Inc., v. Insurance Co. of North America (D. C. N. Y.) 36 F.(2d) 269, 271, Judge Woolsey clearly expresses such desire, "that the avoidance of multiplicity of suits by every device, which is jurisdictionally possible and practically convenient, should be encouraged, and should be one of the main objectives of procedural administration, and of decisions by courts in practice cases." And the same Judge in Irving Trust Co. v. Marine Midland Trust Co. of New York (D. C. N. Y.) 47 F.(2d) 907, 908, states that "multiplicity of suits involving issues which can be conveniently tried together" is something that equity holds in abhorrence.

This court recognizes the general principle that the avoidance of a multiplicity of suits is a ground of equitable jurisdiction, and that equity may interfere to prevent them. Investors' Guaranty Corporation v. Luikart

(C. C. A. 8) 5 F.(2d) 793; Crawford County Trust & Savings Bank v. Crawford County, Iowa (C. C. A.) 63 F.(2d) 342, opinion filed January 25, 1933.

In Wyman v. Bowman (C. C. A. 8) 127 F. 257, 263, this court held there was a community of interest among the defendants in every question of law and of fact presented by the controversies, that far following the Pomeroy rule, and then held that "the convenience of all parties will be better served by a determination of them here in a single suit, than by repeated decisions of them in nine separate actions at law," recognizing the rule of convenience later herein referred to.

In Barston v. Mingo Drainage District (D. C. Mo.) 264 F. 224, 227, Judge Faris in the District Court, Eastern Division of Missouri, discussed the question and indorsed the rule laid down in 10 Ruling Case Law, 282, which in part is as follows: " * * * The trend of the authorities is to the effect that there must be at least some well-recognized ground of equitable interference, or some community of interest in the subject-matter of the controversy, or a common right or title on which all the separate claims and the questions at issue depend, or there must be some common purpose in pursuit of a common adversary where each may resort to equity in order to invoke its aid to adjudicate in one suit the rights of numerous different parties whose claims are separate and distinct; and the mere fact that their separate rights will require the application of the same principle of law, and that their right originally sprang from the source, is not sufficient."

This court (Bartson v. Mingo Drainage Dist., 284 F. 52) affirmed Judge Faris' holding of lack of equitable jurisdiction, concluding that appellant had a plain and complete remedy at law, saying at page 54: "The doctrine that equity will entertain a single action to avoid many, whether brought at law or in equity, of course, is well settled. A reference to the texts of writers and the decided cases discloses that a mere number of actions will not suffice, and that under various circumstances this remedy in equity has been allowed and denied, as it has been developed since its origin. * * * No exact formula has been prescribed for all cases, and the decisions are not entirely harmonious upon the same given circumstances."

In Carey v. McMillan (C. C. A. 8) 289 F. 380, 387, this court, speaking by Judge Booth in a suit filed by the receiver of the Midland Packing Company against some 249

defendants, held that, the demands being purely legal and independent of one another, no community of interest of the defendants in the important questions of law and fact involved being shown, "the bare multiplicity of suits is not sufficient to give the court jurisdiction to entertain the present bill in equity," and further that there was an adequate and plain remedy at law. In Leavenworth Savings & Trust Co. v. Newman (C. C. A. 8) 23 F.(2d) 835, 838, this court, speaking again through Judge Booth, said: "It is doubtless true, as appellees contend, that the mere avoidance of a multiplicity of suits is not sufficient in all cases to give a court of equity jurisdiction."

This holding would seem to imply that avoidance of multiplicity of suits may be sufficient in some cases as the basis of equitable jurisdiction. This court is in line in its later decisions with the doctrine of Hale v. Allinson, 188 U. S. 56, 77, 78, 23 S. Ct. 244, 252, 47 L. Ed. 380, which adopts the "balance of convenience theory":

"Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff; and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction.

"We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of right or interest in the subject-matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy."

There is nothing in the language of St. Louis, I. Mt. & So. Ry. Co. v. McKnight, 244 U. S. 368, 37 S. Ct. 611, 61 L. Ed. 1200, in any way apparently intending to overrule the language of Hale v. Allinson, supra. In Matthews et al. v. Rodgers et al., 284 U. S. 521, 529-530, 52 S. Ct. 217, 221, 76 L. Ed. 447, the Supreme Court said: "In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or defendant, and the issues between them and the adverse party are not necessarily identical." [1]

These forty-eight bills of lading which conceivably might pass into the hands of other parties were forgeries, accepting the statements of the petition as true. The question of fraud is not here involved, for no fraud is charged as against the defendants in the bill. Surely a suit could be brought in equity under these circumstances to cancel void instruments so that in this case there is a well-recognized ground of equity jurisdiction outside of multiplicity of suits. The relief sought against all the defendants was the same, to wit, the cancellation of these bills of lading. The defenses which could be interposed were the same, the legal questions were the same. The operation of the acts of defendants upon plaintiff were identical in their effect upon plaintiff's rights. If the case had been brought against defendant-appellant alone, the proposition would have been different, because it had brought no suit, and a court might not be willing to presume that, instead of bringing one action covering all the purported bills of lading held by it, it would

[1] A most interesting and instructive article on the subject of "Bills of Peace with Multiple Parties," by Professor Zechariah Chafee, Jr., of Harvard Law School, is to be found in the Harvard Law Review for June, 1932.

bring a number of suits, but in regarding the equities of the situation the action of its co-defendants is proper to be considered.

The remedy at law must be plain, adequate, complete, and as efficient to the ends of justice as the remedy in equity to preclude the maintenance of the equitable suit. Boise Artesian Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; Hayden v. Thompson (C. C. A. 8) 71 F. 60; Lake Charles Rice Milling Co. v. Pacific Rice Growers' Ass'n (C. C. A. 9) 295 F. 246.

In the case at bar there can be no possible doubt from the allegations of the bill of complaint but that such remedies at law as raising the defense of forgery in forty-eight separate suits that may be brought in as many separate jurisdictions (including the separate intrastate jurisdictions in which such suits may be brought), or of consolidating, in accordance with the Arkansas statute, as many of such suits as might happen to be brought in the same court in Arkansas, are entirely inadequate; that each party, with reference to each claim, has an interest in the same general controversy, "connected with the others," so that whatever separate issues are raised may be "conveniently tried together"; or that the "balance of convenience" clearly favors the granting of the relief prayed for. A prima facie case of equitable jurisdiction is therefore clearly made out.

The language of this court in Leavenworth Savings & Trust Co. v. Newman, 23 F.(2d) 835, 838, fits this case: "The remedy at law available to plaintiff is not as prompt, practical, and efficient to attain the ends of justice as a suit in equity. On the face of the bill, at least, the convenience of both plaintiff and defendants will be best subserved by a single suit in equity. Under such circumstances, the avoidance of a multiplicity of suits is a sufficient and valid reason for joining the defendants in a single equitable suit."

The District Court was right, and its judgment is affirmed.